Roy Henry PREAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00148–CR.

Court of Appeals of Texas,
San Antonio.

June 2, 1982.

Rehearing Denied June 30, 1982.

E. Bruce Curry, Kerrville, for appellant.

Ronald L. Sutton, Dist. Atty., Junction, for appellee.

Before KLINGEMAN, BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for aggravated robbery. A jury, having found appellant guilty, assessed his punishment at seventy-five (75) years' imprisonment. We affirm the judgment.

■ Appellant contends in his first ground of error that the trial court should have dismissed his indictment for failure to state a cause of action. He asserts the indictment does not charge an essential element of the offense. The indictment, in pertinent part, alleges the appellant did then and there:

"... while in the course of committing theft and with intent to maintain control of property of Norman Tomlinson, to-wit: currency in the amount of more than $200 but less than $10,000, without the effective consent of the said Norman Tomlinson and with intent to deprive the said Norman Tomlinson of said property, did then and there by using and exhibiting a deadly weapon, to-wit: a handgun *intentionally and knowingly threaten Norman Tomlinson with imminent bodily injury or death*, ..." (Emphasis added.)

Tex.Penal Code Ann. § 29.02 (Vernon 1974) provides:

(a) A person commits an offense if, in the course of committing theft ... and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

\* \* \* \* \* \*

Tex.Penal Code Ann. § 29.03 (Vernon 1974) provides:

A person commits an offense if he commits robbery as defined in Section 29.02 ..., and he:

(1) causes serious bodily injury to another; or

(2) uses or exhibits a deadly weapon.

\* \* \* \* \* \*

An indictment for aggravated robbery must include the required elements of robbery. Further, there must be an allegation of aggravation that a defendant (1) caused serious bodily injury, or (2) threatened *or* placed another in fear of imminent bodily injury or death. One or the other must be

alleged. *Williams v. State*, 524 S.W.2d 73 (Tex.Cr.App.1975).

*Green v. State*, 567 S.W.2d 211 (Tex.Cr. App.1978) discloses a mirror allegation of that in the instant indictment. There the defendant was charged with having placed the complaining witness in fear of imminent bodily injury and death (omitting "threatened"). Unlike the present case, however, the question addressed on appeal was the quantum of proof required under that allegation. Apparently discerning little distinction between the disjunctive methods of violence in that particular case, the court determined the evidence was sufficient to support the conviction. Significantly, the court did not question the content of that indictment.

■ The allegations of the indictment in *Lincoln v. State*, 560 S.W.2d 657, 658 (Tex. Cr.App.1978) alleged both threatening and placing another in fear. The court stated, "... Thus, proof of threats *or* proof of placing another in fear of imminent bodily injury or death will suffice." (Emphasis added.) While it is common practice to allege both methods of violence, the State is never required to prove both threats *and* placing in fear. It may do so, however.

■ Conversely, the State in the instant case, by alleging only one of the two means of violence, codified disjunctively in the robbery statute, was bound to prove that one (threats). Further, the trial court in this case was correct in eliminating "or placed in fear" from the jury charge. *Lee v. State*, 577 S.W.2d 736 (Tex.Cr.App.1979). We find the indictment recited the essential elements of the offense of aggravated robbery. The ground of error is overruled.

■ In ground of error two appellant claims there is a variance between the sum of money alleged in the indictment to have been taken from witness Norman Tomlinson and the amount proved by the State. This, argues appellant, results in insufficient evidence to support the conviction. The sum alleged in the indictment, *supra*, was "more than $200 but less than $10,000." Tomlinson, an employee on October 10,

1979, at the place of the robbery, Harold's Food Mart in Junction, Texas, testified the amount taken from him was about $970.96, but that included credit card payments and some checks. The evidence disclosed that appellant had either $418.71 or $420.00 at the time of arrest, and that one companion had $155.00 and the other one had $151.01. We find no variance between the allegations and the proof.

■■■ Moreover, in a robbery prosecution it is not necessary to prove that all the property alleged was actually taken. Proof that any part of that alleged was taken is sufficient. *Sirls v. State*, 511 S.W.2d 55, 57 (Tex.Cr.App.1974). The robbery statutes *supra*, support this proposition by the very definition of robbery. To allege any amount of money or currency becomes unnecessary under that definition because the amount of money taken is not descriptive of the offense of robbery. *Davis v. State*, 532 S.W.2d 626, 629 (Tex.Cr.App.1976). We overrule the ground of error.

In his third ground of error appellant contends the doctor who examined appellant as to his mental competency and possible defense of insanity should have filed a separate report on each subject and not one report encompassing the two subjects. He maintains the trial court committed error by permitting this to be done over appellant's objection as Tex.Code Crim.Pro.Ann. art. 46.03 § 3(g) (Vernon 1979) mandates separate reports be filed.

Our examination of the record reveals these three matters: (1) that appellant offered the objection on the day following completion of the competency trial, (2) that the report of the doctor regarding insanity was not placed before the jury, nor was any part of the report introduced in evidence, and, (3) that appellant's attorney read to the jury from a letter written by appellant on January 10, 1980, the appellant's admission that he was "pilled up and drunk on wine ... for a couple of days" at the time of the offense. "I was drunk and pilled up and just lost it there for awhile ... I know I was wrong for robbing anyone but my mind wasn't with me at the time...."

Appellant clearly made reference to his mental state at the time of the instant offense. *See Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1976) for a discussion of the evidentiary "curative doctrine" of admissibility.

■■■ We perceive no evidence of harm resulting to appellant at the competency hearing because the doctor failed to file two separate reports, and appellant directs our attention to no harmful incident. At the same time we find that the filing of separate report avoids the possibility of intermingling, mixing, and confusing the distinct issues of competency to stand trial and insanity, which is undoubtedly the design of the statute. We suggest that procedure be followed.

■■■ Addressing the first of our observations, *supra*, we find the objection, without regard to its content, to be untimely. It is fundamental that an objection, to be timely, must be made at the first opportunity. *See, e.g., Garcia v. State*, 573 S.W.2d 12, 16 (Tex.Cr.App.1978), *Jones v. State*, 471 S.W.2d 413, 415 (Tex.Cr.App. 1971). The ground of error is without merit.

In his fourth ground of error appellant maintains the evidence (gun and money) was recovered through an illegal arrest and search and should not have been admitted in evidence. Witnesses at the scene described in detail appellant and one of his co-defendants. This included approximate ages, hair, size, and clothing. Witnesses had observed two men running to a car and leaving hurriedly. Although there was disagreement as to the model of the car and year, it was described as light in color, older, and dirty.

Inside the store at the time of the offense were Tomlinson and two truckdrivers. One of the truckdrivers, Larry Jernigan, testified that he was kicked in the head by appellant. Tomlinson and Jernigan testified that the appellant had a gun, and they identified appellant at the jail the same evening. Within a few minutes after the appellant and his companion fled in an

automobile, two officers of the Department of Public Safety entered the store by chance. They immediately radioed the descriptive information to other law enforcement officers, stating that the suspects were "wanted" in Junction for armed robbery which had occurred at about 5:05 p. m. They related that the gun used was a .22 Ruger pistol. The broadcast also told which direction the suspects' car had taken, heading east on interstate highway 10 toward Kerrville.

Gillespie County deputy sheriff K. L. Grobe received the broadcast and stationed himself on highway 290 outside Fredericksburg. It was here he stopped the vehicle in which appellant was a passenger. He testified the time was approximately one hour later and the distance traveled, about sixty miles, comported with the time required. Further, he stated the number of cars at that time was minimal. Grobe saw appellant attempt to throw away some folded money ($235.00) after he and his companions had been removed from the car.

 The test for determining probable cause based upon a radioed police broadcast is the information known to the officer who requests other officers to effect an arrest. *Williams v. State*, 621 S.W.2d 609 (Tex.Cr.App.1981), *Hooper v. State*, 516 S.W.2d 941, 944 (Tex.Cr.App.1975), *Merriweather v. State*, 501 S.W.2d 887 (Tex.Cr.App.1973). Without repeating the robbery facts known to the two Department of Public Safety officers who broadcast the information, we find that both of these officers had the requisite probable cause to arrest and search appellant and his companions. *See, Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972). Upon receipt of the information from these officers, Grobe was justified in stopping the vehicle, arresting the occupants, and searching them and the vehicle for weapons and for the fruit of the robbery, money, all without a warrant. Additionally, the folded money which appellant attempted to discard was recovered by Grobe while in plain view, which removed that evidence from the protective sphere of either the United States Constitution or the Texas Constitution. Admission in evidence of these items of evidence presented no error. The ground of error is overruled.

Appellant in his fifth ground of error challenges the trial court's failure to charge the jury on circumstantial evidence made necessary because the State presented no direct evidence of the exact amount of money taken. He claims also that the evidence is indirect since the State did not prove this was the very same money that was taken.

 Under the robbery statutes, *supra*, proof that money was actually taken is not an essential element of the offense, when the allegation "while in the course of committing theft" is included in the indictment and charge to the jury. *See e.g., Wells v. State*, 576 S.W.2d 857, 859 (Tex.Cr.App.1979). A charge upon circumstantial evidence in Texas becomes necessary only when the evidence of the main fact essential to guilt is entirely indirect. *Ransonette v. State*, 550 S.W.2d 36, 43 (Tex.Cr.App.1977). In this case direct evidence from identification witnesses established that appellant was a principal offender. There was direct evidence that he threatened the victims at the store with a gun, that he cursed them, threatened to kill one of them, and kicked one of them in the head. Proof of the exact amount of money taken and proof that the money recovered was the same money that was taken were not main facts to be proven before guilt could be established. We overrule the ground of error.

The judgment is affirmed.

KLINGEMAN, J., concurs in result.

CLARK, Justice, concurring.

I concur in affirming the trial court's judgment, but I am unable to join without reservation in the court's discussion of appellant's fourth ground of error, even though I agree that the gun found on appellant's person was not the fruit of an unlawful search.

The answer to the issue raised by appellant in his fourth ground of error is, in my view, rooted in the principles of *Terry v.*

*Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I cannot agree with the court's categorical finding that the officers who broadcast the information which led to appellant's arrest "had the requisite probable cause to arrest and search appellant and his companions." That statement is overbroad, and the sentence which follows it suggests that the validity of appellant's arrest and the admissibility of the gun found on his person depended upon the broadcasting officers having had that full measure of probable cause themselves, and that the arresting officer summarily arrested and searched appellant and his companions solely on the basis of the information provided by the broadcasting officers. Neither implication is correct.

The broadcasting officers disseminated the generally accurate, but incomplete and in some respects imperfect, physical descriptions of two suspects and a getaway car after talking with the robbery victims inside the store and witnesses outside who saw two men flee in an automobile. The information they broadcast also included a specific description of the gun used in the holdup, a black .22 caliber Ruger automatic pistol. Knowing that the suspects had proceeded east on Interstate Highway 10 from the robbery site near Junction, and believing that Highway 290 was one of the two routes they were most likely to take if they continued to travel in that direction, the Sheriff of Gillespie County situated himself some six miles west of Fredericksburg at a roadside park that commanded an advantageous view of eastbound traffic on Highway 290. The Sheriff also knew that the robbery occurred at approximately 5:05 p. m., and that the distance between Junction and Fredericksburg could be traveled in approximately an hour at the legal speed limit, and he surmised that the escaping robbers would travel at the speed limit in order to avoid drawing attention to themselves. From the Sheriff's vantage point thirty to forty feet off the roadway, he could observe eastbound traffic for about seventy-five yards as it approached him rounding a slight curve.

The getaway car had been described over the air as a light-colored, but dirty, sedan, probably a 1958 to 1962 Chevrolet. Traffic was extremely light on Highway 290, and no vehicle resembling that description came along until approximately 6:10 p. m. At that time the Sheriff observed what later proved to be a 1971 Ford four-door sedan, light green in color, and dirty, proceeding in a normal fashion toward Fredericksburg. He observed two men in the front seat of the car and was able to see that the driver's age, hair, and shirt appeared to match the radioed description of one of the holdup men. The front-seat passenger's clothing was not visible, as he "either scooted down or was already in a scooted down position" when the car approached the Sheriff's location, but the officer was able to see that the passenger had a prominent mustache and otherwise matched the general description of the other robber as to age and length of hair. The passenger looked toward the Sheriff and then looked away. The driver looked back toward the Sheriff after passing him.

Not unreasonably, considering the general similarities between the physical characteristics of the men and vehicle he had just seen and those described over the police radio, and considering also that it had been approximately an hour since the robbery took place, the Sheriff stopped the vehicle to investigate. As the two men in the front seat emerged from the automobile and began to walk toward him, he noticed additional similarities between their clothing and that described over the radio. A third man, who apparently had been lying down in the back seat, also emerged from the car, and the Sheriff ordered all three men to place their hands on the trunk of the vehicle. He had advised the men that they had been stopped because they matched "pretty closely" the physical descriptions of the holdup men, and he began to pat them down for weapons. Upon finding a black .22 caliber Ruger automatic pistol stuck into the top of appellant's boot, the Sheriff handcuffed all three men, advised them of their rights, and radioed for assistance. After he was handcuffed, the appel-

lant was observed trying to discard a "wad of bills," which the Sheriff retrieved from the adjacent bar ditch.

If an officer can "point to specific and articulable facts which, taken together with rational inferences from those facts" reasonably warrant an immediate intrusion, an individual can be subjected to brief seizure for the purpose of a weapons search. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The seizure, however, must be immediate, brief, and completed at the scene. Reasonable suspicion sufficient for a *Terry* "stop and frisk" is not enough to take the citizen to the police station for further questioning. Probable cause is required for that additional step. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The articulable suspicion which justifies a "stop and frisk" does not have to be based upon the officer's own observation, but may be based upon information supplied by another. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In my view the Gillespie County Sheriff had sufficient specific and articulable facts, taken together with rational inferences therefrom, to justify his investigative stop of appellant and his companions. Considering the nature of the offense they were suspected of having committed, the Sheriff was justified in patting them down for weapons at that point, especially in light of his observation of additional corroborative descriptive facts when the men emerged from the automobile. When the patdown of appellant produced a gun which matched precisely the description of the gun used in the robbery, the Sheriff's probable cause to "stop and frisk" escalated to probable cause to secure the arrest and take the suspects into custody as he did. My purpose in pointing out these facts and the applicability of *Terry* principles is to make it clear that the record shows appellant and his companions were not summarily arrested and subjected to a search of their persons and vehicle on the basis of the somewhat imprecise descriptions gathered by the officers at the scene of the robbery and broadcast on the radio. I would emphasize that this appears to be an instance of the proper exercise of "stop and frisk" authority based upon reasonable suspicion, followed by the perfection of an arrest based upon probable cause arising from the patdown for weapons.

With respect to appellant's third point of error, in which he complains that the court-appointed psychiatrist who examined him failed to file separate reports dealing with the issues of sanity and competency, appellant should not be heard to complain at all. By pre-trial motion the appellant requested that the trial court appoint a phychiatrist to examine him with respect to both competency and sanity and "direct said psychiatrist to file a written report of the examination ... includ[ing] with the report ... the examiner's observations and findings pertaining to the Defendant's competence to stand trial and defense of insanity." The trial court granted appellant's motion in appellant's own terms. Appellant thus received precisely what he requested—one report containing the examiner's observations on both competency and sanity—and has no basis for complaint on this appeal.