Donnell **HOOPER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 49091.

Court of Criminal Appeals of Texas.

Dec. 18, 1974.

Rehearing Denied Jan. 15, 1975.

George Gilkerson and Danny E. Hill, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Richard Palmer, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before the court without a jury, appellant was convicted of robbery by firearms. Punishment was assessed at five years.

The evidence, when considered most favorably to the judgment, reflects that at about 1:10 A.M., on February 15, 1973, a black man with a rifle entered a 7-Eleven store located at the corner of 37th and Slide Streets in Lubbock, and robbed Mrs. Audie Mae Holley, the clerk then in possession and control of the store, of $81.00 in money. Mrs. Holley identified appellant as the robber.

In his first three grounds, appellant argues that the court erred in admitting in evidence a black leather coat, ski mask, rifle and $81.00 in money, since said evidence was discovered as a result of an illegal stop, search and seizure of the car and illegal detention and arrest of appellant. Appellant contends that the actions of police officers in stopping the car, searching it, seizing the named articles, and in arresting him on this occasion without a warrant were not supported by probable cause, and were in violation of his rights under the Fourth and Fourteenth Amendments to our Federal Constitution, and under Article, Section 9, of our Texas Constitution, Vernon's Ann.St., and Article 14.03, Vernon's Ann.C.C.P.

Prior to the trial, a hearing was had on appellant's motion to suppress this evidence. Testimony was heard, and the motion was overruled. At the trial, which was before the court, this and additional evidence was introduced, which we shall summarize as follows:

Immediately after the robber had left the store, Mrs. Holley telephoned the police, notifying them of the robbery. A message was broadcast over the police radio of the armed robbery at the 7-Eleven store at 37th and Slide Streets. The robber was described in the broadcast as being a black man about six feet tall, weighing between 170–180 pounds, wearing a dark colored coat or jacket. Officers Barnett and Summerlin, on patrol in a police car, responded to the call. As they turned into Slide Street, they noticed the taillights of a car about four blocks ahead leaving from the neighborhood of the store. Barnett got out of the police car at the store, and Summerlin proceeded to follow the other car at a fast rate of speed. Barnett testified that the car was headed south on Slide toward Loop 289.

In the store, Officer Barnett spoke to Mrs. Holley, and then, since other police cars had arrived, sent out a second broadcast over police radio of the robbery, de-

scribing the robber as a black man about 6 feet or 6 feet 2 inches tall, weighing about 180 pounts, wearing dark clothing, having a rifle or a .410 gauge shotgun which he used in the robbery, and stating that in the robbery he wore a ski mask.

In the meantime, Officer Summerlin chased after the other car, finally losing it on a street which connected with Loop 289. He put out a police broadcast to the effect that he was in pursuit of a car that had left the vicinity of the 7-Eleven on 37th and Slide, and later that he had lost the car.

Loop 289 is a freeway which encircles Lubbock, and which intersects Slide Street at 70th Street.

Officer Mayfield testified that, while he and his partner Wheeler were on patrol in a marked police car, they heard the radio broadcast about the robbery at the 7-Eleven store on 37th and Slide Streets by a black man described as stated above. They also heard the broadcast by Officer Summerlin. They drove to Indiana Avenue and Loop 289, about 3½ miles east of the 7-Eleven store, and stopped off the highway with the car lights off. In about five minutes, a car was seen coming on Loop 289 travelling east, a direction away from the scene of the robbery. This was the only car which they had seen on the highway during their period of waiting. As the car approached them, they each shined spotlights into the car. A woman was driving. They saw a black man sitting high in the passenger's side of the front seat, evidently tall, and wearing a dark coat. Mayfield and Wheeler each testified that this man fit the description given of the robber in the police broadcasts. This car was headed toward the section of Lubbock occupied mostly by black residents. Since the man in the car fit the description given in the police broadcasts of the robber, and having heard Summerlin's broadcast of chasing and losing a car seen to leave the location of the store right after the robbery, Mayfield and Wheeler turned on the red flashing lights and the siren of their car and took out after the car on Loop 289. There is no evidence of any traffic violation by that car or its driver. However, Officers Mayfield and Wheeler testified that as they turned on the red light and siren and started their car the automobile in front of them picked up speed. The officers caught up with it after following about a mile, and stopped it. They radioed for assistance, and ordered the two occupants to keep their hands against the windshield of their car until their back-up car arrived. Soon thereafter, when other police arrived, the two occupants were told to get out of the car and the car was searched. This search occurred at 1:28 A.M., about 18 minutes after the robbery. A rifle loaded with five live shells was found under the passenger seat and seized. After the rifle was found the officers handcuffed appellant and his companion and placed them in custody. This rifle was identified by Mrs. Holley as being very similar to the one used by the robber. The coat taken from appellant was identified in the same manner. Eighty one dollars in bills was found under the wig which the woman was wearing. The ski mask identified by Mrs. Holley as the one worn by the robber and a pair of dark pants with appellant's name on the waistband were found shortly after the arrest in a ditch along the section of Loop 289 that the car was on when being chased by the two officers.

Appellant argues that the State failed to show probable cause to stop and search the car, and to arrest him.

■ In order for a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time the search or arrest is made and the existence of circumstances which made the procuring of a warrant impracticable. Stoddard v. State, Tex.Cr.App., 475 S.W. 2d 744; Colston v. State, Tex.Cr.App., 511 S.W.2d 10; Brown v. State, Tex.Cr.App., 481 S.W.2d 106.

Officers Mayfield and Wheeler had not acquired probable cause on their own, but were relying on the strength of the radio calls from Officers Barnett and Summerlin. They had the right to act upon the basis of the police messages, and were entitled to assume the officer making the call had probable cause to justify their acting in reliance thereon. Colston v. State, supra, and authorities cited. The test as to probable cause where the officers act solely upon police radio calls is the information known to the officer who makes the call. *Colston,* supra, and cases cited.

In the instant case, the calls were made by the very officers who were then investigating the case, and who received their information first hand. Both of said officers, Barnett and Summerlin, testified on the trial as to the source of their information. Mayfield and Wheeler had the right to act in reliance on the information received by them in the police calls. Merriweather v. State, Tex.Cr.App., 501 S.W.2d 887.

There is no static test to be applied in all cases in determining the existence of probable cause. The existence of probable cause and, therefore, the constitutional validity of a warrantless arrest or search can only be determined in terms of the concrete factual situation presented by each individual case. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917; Brown v. State, Tex.Cr.App., 481 S.W.2d 106; Colston v. State, supra. Probable cause exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentalities of a crime or evidence pertaining to a crime. Wood v. State, 515 S.W.2d 300 (1974); Fry v. State, Tex.Cr.App., 493 S.W.2d 758, 768.

Officers Mayfield and Wheeler received information from a reliable source at 1:18 A.M. that an armed robbery had been committed at 37th and Slide Streets at 1:10 A.M. Included was a description of the robber. Although they had no definite information that the robber escaped in a car and they had no description of a car, they were told that a car was seen by two officers leaving the vicinity of the 7-Eleven store at a high rate of speed a few minutes after the robbery, and that one of the officers, Summerlin, had chased the car but lost it while it was on a street headed south. Mayfield and Wheeler knew that Loop 289 encircled Lubbock and could be approached from the street where Summerlin had last seen the car that he was chasing. They also knew that the population in east Lubbock was largely black and that Loop 289 is a readily available route from where Summerlin had lost the car to east Lubbock. Hence, it was just good police work for them to set up surveillance at a position on Loop 289 east of where Summerlin had last reported the car.

When they flashed their spotlights in the only car they had seen on the highway during their approximately five minute wait, they saw a black man who fitted the description given to them of the robber. As they started to follow this car, it increased its speed.

Based upon the information they had received over the radio that a felony had been committed and that the robber was about to escape, and upon the results of their surveillance, the officers had reasonable cause to follow and stop the car. Article 14.04, V.A.C.C.P;[1] Wood v. State, supra; Nichols v. State, Tex.Cr.App., 511 S.W.2d 269; Breedlove v. State, Tex.Cr.App., 470 S.W.2d 880; Fry v. State, Tex.Cr.App., 493 S.W.2d 758, 768.

Appellant relies upon our decision in Brown v. State, Tex.Cr.App., 481 S.W.2d 106, as being the case most nearly in point supporting his contentions.

1. "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant pursue and arrest the accused."

We quote from *Brown* as follows:

"The facts relevant to determining whether probable cause existed for the arrests in the instant case are: (1) that a robbery was committed at a Dallas supermarket by three armed men who escaped on foot; (2) that witnesses to the robbery described these men by race and approximate size; (3) that, approximately twenty-four hours later, Officer Houston observed the four appellants riding in a 1968 green Volvo in downtown Dallas; (4) that appellants turned and looked toward him as he followed them; (5) that the officer first observed appellants at 1:30 A.M.; (6) that the street on which they traveled was poorly lighted and sparsely traveled at that time of the morning; and (7), that Ellis and Nezey moved their shoulders while looking toward the officer.

"Officer Houston's decision to stop and detain appellants and to search their car was based on two facts: (1) his conclusion that they 'fit the general description' of the armed robbers; and (2), his conclusion that Ellis and Nezey were concealing weapons in the rear seat of the Volvo."

This Court, after a discussion of the facts and applicable rules of law, stated:

"To find the appellants' conduct in the instant case sufficient to constitute probable cause to arrest pursuant to Article 14.03 supra, would be to assume: (1) that they recognized Officer Houston's unmarked car as a police car; (2) that these gestures were in response to that awareness; and (3) that they were purposely made to avoid apprehension. We find that this chain of inferences is too tenuous to establish probable cause for an investigative stop. People v. Superior Court of Yolo County, supra.

"There being no probable cause for the arrest of appellants or for the search of their automobile, reversible error was committed by overruling the motion to suppress evidence and by the admission of such evidence at the trial."

In the instant case Officers Mayfield and Wheeler received the broadcast of the robbery with a general description of the robber within ten minutes of the robbery. They also received the information of the car leaving the vicinity of the 7-Eleven store and being chased and lost by Officer Summerlin. They had reason to believe that the robber was in a car headed toward Loop 289 at the time of Summerlin's broadcast and that the car would proceed east on that highway. Within less than ten minutes after they received the first radio message, they spotted the only car passing on the Loop during their 5–7 minutes of observation, with a man in it fitting the general description given them. They were in a marked police car, and as they started after the other car they turned on the red light and police siren. The other car increased its speed and proceeded for about a mile before being stopped. The arrest occurred within 20 minutes of the robbery.

As stated above, in the matter of determining probable cause, each case must be decided on its own factual situation. *Brown* is not decisive of the situation in the instant case.

Having probable cause, the factual situation confronting the officers establishes that exigent circumstances existed requiring them to proceed without waiting for a warrant.

■ Considering the totality of the circumstances, Officers Mayfield and Wheeler had probable cause to stop the car for investigation. Having received reliable information that the robber was armed and dangerous, they had a right to conduct a weapons search so that they could continue their investigations without fear of violence. Wood v. State, supra; Lewis v. State, Tex.Cr.App., 502 S.W.2d 699; Merriweather v. State, Tex.Cr.App., 501 S.W.2d 887.

Furthermore, under the totality of the circumstances, the officers were justified in their arrest of appellant.

Also, under all the facts and circumstances present, the officers were justified in searching appellant's woman companion, the driver of the get-away car. In Merriweather v. State, supra, we upheld a personal search of the defendant's boots to determine whether a weapon might be concealed. A stolen diamond was found. In the instant case, a search of the woman's wig revealed eighty one dollars, the amount of money taken in the robbery.

The court did not err in admitting the evidence found as a result of the search of the car and the parties.

The first three grounds of error are overruled.

In his fourth and fifth grounds, appellant contends that the evidence is insufficient to sustain the judgment of guilty, and to rebut the presumption of innocence.

We have heretofore summarized the evidence in the case. The trial was before the court without a jury. We find the evidence to be amply sufficient to support the judgment.

The judgment is affirmed.