**Willie Lee FAULK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54141.**

Court of Criminal Appeals of Texas,
Panel No. 3.

Nov. 29, 1978.

Rehearing En Banc Denied Jan. 10, 1979.

---

**5.** Although I dissented in *James*, I am of course bound by the holding in that case.

John J. C. O'Shea, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., and B. Jackson Jones, Jr., Asst. Dist. Atty., Lubbock, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of aggravated robbery. Upon his plea of not guilty before a jury, the appellant was found guilty and his punishment was assessed by the jury at confinement for a period of seven years.

In appellant's Ground of Error No. 1 he complains that the trial court erred in failing to grant his motion to suppress certain evidence which he alleges was obtained as a result of an unlawful search and seizure.

On July 19, 1975, an armed robbery occurred at a Seven-Eleven convenience store located near the intersection of 49th Street and Memphis Avenue in Lubbock, Texas. After the victim released herself from the cold storage vault, she called the police and told them that she had just been robbed by a young black male wearing a multicolored shirt. No further description was given according to her testimony at the motion to suppress hearing. She testified that while in the cold storage vault she observed the robber exit the store and run to the south, which happened to be in the direction of 50th Street. It should also be noted that it was also probably in the ·direction of 51st Street, 52nd Street, 53rd Street, and every other consecutively numbered street to the south. However, 50th Street has been emphasized since it is a six-lane thoroughfare that connects east and west Lubbock. It also appears that a large segment of the black community in Lubbock lives in east Lubbock and the location of this robbery was west Lubbock. No vehicle was observed by the victim and the last she saw of the robber was his departure on foot to the south, as mentioned. This even less than general description was radioed over the police broadcast network and was received by Officer Brackeen when he was two miles from the scene of the crime. After travelling approximately half a mile he observed several vehicles heading east on 50th Street, one of which was occupied by a young black male. The officer made a U-turn at which point he observed the young black male's automobile speed up slightly, the young male bend forward and to the right and then again reduce his speed. It is important to note that at no time did the young black male commit a traffic offense or any other offense within view of Officer Brackeen. *On these facts*, Officer Brackeen stopped the vehicle with the young black male. The vehicle stopped, Officer Brackeen ordered the occupant to exit, which order was complied with. At the time Officer Brackeen made his request, he had his weapon drawn. Upon the arrival of other officers at the scene, Officer Brackeen had the occupant out of his vehicle with his hands on top of the car and had his weapon holstered. The other police officers to arrive at the scene then proceeded to search the young black male's automobile and discovered under the seat a hat and blue money pouch. Officer Brackeen discovered a weapon under the dash of the young black male's vehicle.

Although appellant's first ground of error is couched in terms of both an unreasonable and illegal search and seizure and a search and seizure of excessive scope, the discussion and arguments under that ground of error are sufficient to identify the issues for this Court to pass upon. See Article 40.-09(9) and (13), V.A.C.C.P. One of the critical and initial issues to be addressed was whether Officer Brackeen had probable cause to stop the young black male's vehicle. In *Brown v. State*, 481 S.W.2d 106, this Court stated:

". . . Probable cause for an officer to detain a person temporarily for investigative purposes exists where the circumstances reasonably indicate that that particular person either has or is preparing to commit a crime. [Footnote and citations omitted.]

"The inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause under any of the three above named classes. [Citations omitted.] For '[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' *Beck v. Ohio*, [379 U.S. 89, 85 S.Ct. 223, 11 L.Ed.2d 604 (1964)]."

*Brown v. State*, supra, is instructive also in determining the appropriate disposition of the instant case, besides the general propositions of law set forth therein. In that case, it was known that a robbery was committed by three armed men who escaped on foot; that the men were described by race and approximate size; that they were observed 24 hours later riding in an automobile; that they looked at the police officer; that they were observed at 1:30 a. m. on a poorly lighted and sparsely travelled street; and that two of the individuals made "furtive gestures" by moving their shoulders while observing the police officer. This Court noted that the fact that they were in an automobile was of no value in determining whether probable cause existed. As in this case, there was no testimony as to what type of car the armed robbers might have used or whether they used one at all. The Court resolved the question to this:

"Thus, we must first determine whether the general description of the armed robbers coupled with the movements of Ellis and Nezey would lead a reasonable and prudent man to believe that the appellants were the armed robbers."[1]

As mentioned in *Brown v. State*, supra, and of equal applicability to the case at hand, "[T]he description of the robbers contained no identifiable characteristics which would serve to distinguish them from the general populace[.]" and the "furtive gestures" of the two individuals who were looking at the police officer could not operate to "transform" the investigating officer's "vague suspicion . . . 'into probable cause for arrest'" since such movement was " 'ambiguous conduct which the arresting officers themselves have provoked.'" *Id.* at 111, quoting from *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

█ It is abundantly clear that in the case at hand the police officer who stopped appellant had only one fact to connect the appellant to the armed robbery—that he was a young black male. Nowhere in the record does it disclose that the police officer observed the appellant wearing a multicolored shirt before he ordered him to exit his vehicle. Further, the so-called "furtive gestures" are as consistent with innocent activity as anything else. Also, his bending over could have resulted in the slight increase in speed of the vehicle and it is noted that the police officer stated that he observed no traffic offenses. Finally, such so-called "furtive gestures" do not bear with them the indicia of a guilty mens rea as they would had the stopping police officer been occupying a marked police vehicle. In this case, it was an unmarked police vehicle.

The only question left is whether the close temporal proximity of the armed robbery and Brackeen's observation of the appellant in his automobile constituted a circumstance which pointed to the appellant as the robber. In *Brown v. State*, supra, the police officer made his observations 24 hours after the armed robbery. In the instant case, the appellant was stopped within a very short time of the robbery. We do not believe that this fact alone contributes anything to an officer's determination of

---

1. It should be noted that in *Brown v. State*, supra, the victims gave a description "as to race and an approximation as to height and

weight" of the robbers. In the instant case, the only description given was a "young colored male with a multicolored shirt."

whether probable cause exists to make a stop. If it did, it would be creating a new rule which would provide that the "inarticulate hunch, suspicion, or good faith" of a police officer is sufficient grounds for making an investigatory stop so long as it is made within a specific time frame. However, where do we draw the line? There is no room for such manipulation of the probable cause doctrine. See also *Scott v. State*, 549 S.W.2d 170.

■ As was stated by this Court on rehearing in *Armstrong v. State*, 550 S.W.2d 25:

". . . While a temporary investigative detention is allowed under certain circumstances, these circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officer. * * * There must be reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. [Citations omitted.] Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful." *Id.* at 30–31.

■ This Court has consistently held that the fruits of a search do not justify the initial stop or arrest. *Brown v. State*, supra.

Neither are there grounds for a stopping of the appellant's vehicle under Article 14.-03, V.A.C.C.P., since there is no showing that the appellant was seen in a suspicious place and "under circumstances which reasonably show that [he was] guilty of some felony or breach of the peace, or threaten[ed], or [was] about to commit some offense . . . ."

■ Thus, there being no probable cause for the stopping of appellant's vehicle, the trial court erred in failing to grant appellant's motion to suppress the evidence seized pursuant to the unlawful stop. See Article I, Section 9, Texas Constitution; United States Constitution, Fourth Amendment.

Since we cannot conclude that the use of this illegally seized evidence was harmless beyond a reasonable doubt, the judgment is reversed and the cause remanded.

VOLLERS, Judge, dissenting.

The majority passes upon the question presented in this case on the mistaken assumption that Officer Brackeen must have "probable cause" to arrest the appellant at the time he was initially stopped. This approach by the majority completely overlooks many cases decided by this Court holding that circumstances falling short of probable cause for arrest may justify a temporary detention for the purpose of investigation, since investigation is a lesser intrusion than an arrest. *Coleman v. State*, 500 S.W.2d 472; *Ablon v. State*, 537 S.W.2d 267; *George v. State*, 509 S.W.2d 347; *Baity v. State*, 455 S.W.2d 305.

I will agree that the information possessed by Officer Brackeen at the time he stopped appellant did not amount to probable cause. However, it was shown that he was aware that a 7–11 convenience store, located near the intersection of 49th Street and Memphis Avenue in Lubbock, Texas, had been the location of an armed robbery by a young black male wearing a multi-colored shirt. He was aware that this location was near 50th Street, which was a six-lane thoroughfare that connects east and west Lubbock. He was also aware that a large segment of the black community in Lubbock lives in East Lubbock and the location of this robbery was in West Lubbock. As Officer Brackeen was traveling toward the location of the robbery, approximately one-half mile from that location, he observed a vehicle heading east on 50th Street occupied by a young black male. At this point Officer Brackeen made a u-turn and observed the automobile driven by the young black male speed up slightly. At this point, appellant leaned forward and to the right as he was driving his vehicle and reduced his

speed. With this basis of information it is apparent that Officer Brackeen was doing the job as an investigator that he was paid to do when he stopped the vehicle for further investigation. With his knowledge that an armed robbery had occurred and the person that he stopped might well be armed with a pistol, coupled with his observation that the driver of the vehicle leaned forward as if hiding a weapon, he prudently ordered appellant from the automobile with his hands up. This is simply logical and necessary police procedure in order to protect the safety of the officer so that he may continue his investigation. With the arrival of other officers, the automobile was checked to see if it contained a weapon and a loaded pistol was found under the dash of the vehicle. It was at this point that probable cause arose for the arrest of appellant and that a search of appellant and the rest of the vehicle was justified.

It is well settled that circumstances falling short of constituting probable cause for arrest may nevertheless justify a temporary detention for the purposes of investigation. *White v. State* (No. 57,667, delivered June 14, 1978); *Shaffer v. State*, 562 S.W.2d 853 (Tex.Cr.App.1978); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). The standard applied in determining the reasonableness of such a stop under the Fourth Amendment has been held to be the existence of specific and articulable facts along with reasonable inferences therefrom which, in light of the experience and general knowledge of the officer, reasonably warrant such an intrusion. *White v. State*, supra; *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.1976) (opinion of Onion, P. J., on Motion for Rehearing); *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972); *Terry v. Ohio*, supra. It has been held that in order to satisfy this standard it must be shown that the police officer had a reasonable suspicion that some activity out of the ordinary had occurred; that there was some suggestion to connect the person detained with said unusual activity; and that the alleged unusual activity was criminal in nature. *White v. State*, supra; *Shaffer v. State*,

supra; *Armstrong v. State*, supra. Furthermore, a weapons search incident to such a stop limited in scope to the purpose of allowing the officer to pursue his investigation without fear of violence is justified where the officer has reason to believe that the subject of the detention is armed and presently dangerous. *Hooper v. State*, 516 S.W.2d 941 (Tex.Cr.App.1975); *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App.1974); *Terry v. Ohio*, supra.

In the instant case, Officer Brackeen was acting on the basis of the following specific facts, of which he had reasonably trustworthy information: (1) there had been an armed robbery in close proximity to his location (within six blocks); (2) the robbery had occurred within five minutes of his decision to stop this suspect; (3) the suspect in the robbery was described as a young black male, the subject of this stop was a young black male; (4) when he swung around to follow this car, the driver speeded up slightly and then made a furtive gesture, as if hiding something under the seat; (5) the subject was proceeding eastbound on 50th Street and could have been coming more or less directly from the scene of the crime; (6) the section of town in which the robbery occurred was predominantly white, while the robber was black; and (7) 50th Street was a major east-west thoroughfare connecting the predominantly white with the predominantly black sections of town— the most direct route between the scene of the crime and east Lubbock. In the category of reasonable inferences from the facts, in light of the officer's (six years') experience and general knowledge are the following: (1) that the robber would probably be traveling by auto, although no report to that effect had been received; (2) that the robbery might very well be travelling eastbound on 50th Street, based on the fact that that street is a major east-west thoroughfare and the robber was black and the robbery occurred in the predominantly white section of town, not more than a block off of 50th Street.

These facts and inferences are sufficient to warrant a reasonble man in making an

investigatory detention of the driver of the brown car which Officer Brackeen spotted heading eastbound on 50th Street; the officer at that time had a reasonable basis for his suspicion that this car was being driven by the man who had perpetrated the armed robbery a few short minutes before. The same facts and inferences which warranted the stop in the first place also warranted the belief that this suspect was armed and presently dangerous.[1]

In *Wood v. State*, supra, this Court upheld the search under the seat of an automobile as a limited weapons search in spite of the fact that the subjects of the stop were outside of the car at the time of the search. This Court said:

> "The officer then searched under the seats of the Ford automobile, which appeared to be within four or six feet from the appellant and his companion. The record does not reflect that the same was a general exploratory search, but one limited to a search for weapons for the officer's protection. The area which police may search for potential weapons in frisk situations is the same as that area which the police may search when making a search incident to a lawful arrest, and is the area within the lunge, grasp or reach of the suspect or suspects."

In the instant case, the record reflects that appellant was standing just outside of his vehicle when the officer reached in under the dashboard, to a place toward which he had seen the appellant make a furtive gesture. In that place, underneath the dashboard on the driver's side, he located a loaded pistol, which was cocked. The other items seized were also retrieved from an area toward which this officer had seen the appellant make a furtive gesture. The discovery and seizure of the pistol, the money and money bag and the hat were in the course of a search reasonably limited in scope to enable the officers to proceed with

their investigation without fear of violence. *Hooper v. State*, supra; *Wood v. State*, supra; *Brown v. State*, supra; *Terry v. Ohio*, supra; *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1967).

This case is more similar on its facts to *Hooper v. State*, supra, although it is conceded that there the facts are stronger. That case involved a 7-11 robbery in Lubbock, Texas, as well. Also, the suspects were stopped in that case by officers who had set up surveillance along the route which it was believed that the robbers, identified as black, would travel from the predominantly white to the predominantly black section of town. Shining a light into the car, the officers noticed that the passenger fit the general description they had received over the radio. Unlike the instant case, the car continued down the highway for approximately one mile before yielding to the officers' flashing red lights. The defendants were stopped within 18 minutes of the robbery in *Hooper*. True, in *Hooper*, the defendant was described somewhat more particularly than in the instant case (six-foot to six-foot-two inches, black male, black leather coat or jacket, approximately 180 pounds). It is also true that a police unit had given chase to an automobile spotted in the area shortly after the robbery and had lost the car on a street connecting with the highway on which the defendants were ultimately stopped whereas in the instant case there was no direct information that the suspect was in a car at all. However, I do not feel that the distinctions between the two cases are sufficiently strong to call for different results. The description in the *Hooper* case is not significantly more detailed than that given in the instant case. And, although there was a chase of some nature before the ultimate stop in the *Hooper* case, it was never clear that the vehicle chased was the same as the vehicle stopped, nor was there any solid

---

1. Although Officer Brackeen did not testify directly on the question of whether he feared the subject to be armed, his actions, which appear from his testimony and that of other officers who investigated the crime, demonstrate that he had such apprehension. Thus the record discloses that Brackeen stood behind the door of his police unit, gun drawn and pointed at appellant, while he ordered him out of his car and ordered him to place his hands on the roof of his car. See, e. g., *Wood v. State*, supra; and *Hooper v. State*, supra.

evidence that the vehicle chased was actually involved in the robbery—it was merely seen in the neighborhood shortly thereafter.

Since the officer properly made an investigatory stop, I dissent to the reversal of this cause.