Otha Lee WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–84–0299–CR.

Court of Appeals of Texas, Amarillo.

Aug. 21, 1985.

Marvin Williams, Jr., Lubbock, for appellant.

Jim Bob Darnell, Dist. Atty., Ruth Cantrell, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Otha Lee White brings this appeal from his conviction of aggravated robbery and the consequent court-assessed punishment of twenty-five years confinement in the Texas Department of Corrections. The issue in this case, raised by three grounds of asserted error, is whether the trial court acted correctly in overruling appellant's motion to suppress his confession and the currency and other items seized from him. The basis of his motion was that those things were the fruit of an unlawful arrest. We affirm.

On June 7, 1984, at approximately 3:30 a.m., Spencer R. Balentine was robbed while employed at Wendy's Truck Stop in Lubbock. At that time, a lone black male entered the building and asked for change. While Balentine had his cash drawer open, two other armed blacks sequentially entered the building and the second armed man removed the money in the drawer. All three of the perpetrators then left the building, proceeding in a westerly direction. In the robbery, two rolls of dimes, a roll of nickels, ten or fifteen dollars in quarters, one $20 bill, eight or ten $5 bills and about forty $1 bills were taken.

Balentine contacted the police, and at approximately 3:46 a.m. a robbery report was transmitted over the Lubbock Police Department radio. In this transmission, the suspects were described as three black males with one wearing a yellow cap and sunshades, another wearing a yellow shirt, and with no additional description on the third. Lubbock police officers Doyle Robertson and Lance Slack responded to this broadcast. These officers, each of whom was in a separate car, saw two black males "jogging" in a westerly direction down the middle of the street about nine blocks from the truck stop. Robertson said that as he approached them in his car, they started running and turned north into an alley. Robertson turned his headlights on and he could see that one of the men was wearing a white tee shirt and blue jeans and the other was clad in what appeared to be dark clothing. Robertson made a U-turn and saw the man with the white tee shirt run behind a house and lie down in some weeds. Robertson called for additional help and "more or less closed the block off." He and Officer Slack conducted a search of the block and found the man wearing the tee shirt and blue jeans lying in the weeds behind the house at 508 Avenue C. At 3:56 a.m., the man was placed under arrest and taken to a patrol car where he was searched for weapons. Slack took the man by the truck stop where Balentine was "[n]ot totally" able to identify him. Balentine said he "recognized the shirt, but I didn't recognize the build as well as I did on the other one." Slack said Balentine's response was, "I think that's him, I am not sure." The suspect was then taken to the Lubbock County jail where he was again searched by Slack, who found three quarters, one dime, one nickel and two pennies in the suspect's back pocket. The suspect was transported to the sheriff's department and as he was being removed from the patrol car, Slack found one $20 bill, one $10 bill, forty-five $1 bills and one quarter under the right front seat of the car, directly in front of where the suspect had been seated. Slack testified that there was nothing under the seats in the car prior to the arrest of the suspect.

Officer James Childers also responded to the call and assisted in the search of the 500 block of Avenue C. He saw Slack and Robertson make their arrest and continued his search for the other man. In the back yard of the house at 510 Avenue C, he saw a man, later identified as appellant, lying in a pile of tires and empty five-gallon paint cans. Childers handcuffed appellant, took him to a patrol car and frisked him. During that frisk, Childers found ten $5 bills,

two rolls of nickels, fifty-eight quarters and ten dimes in appellant's left front pocket.

Officer Glenn Osborn assumed the custody of appellant and took him back to the truck stop for possible identification by Balentine. Balentine said he told the officers, "I was almost positive; I didn't say positive, but I said I was almost positive" that appellant was one of the participants in the robbery. Osborn then transported appellant to the police station. While en route, appellant was asked, and consented, to give a statement, which he later did. While appellant strenuously assails the admissibility of the confession, he does not challenge its voluntariness.

 It is obvious that the question presented to this Court is the legality of the stop and arrest of appellant since the discovery of the fruits of the crime and appellant's confession were the result of that action. In that connection, it is axiomatic that circumstances short of probable cause for arrest may nevertheless justify a temporary detention for the purpose of investigation. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Ramirez v. State*, 672 S.W.2d 480, 481–82 (Tex.Crim.App.1984). The standard applied in determining the reasonableness of such a stop is whether there exist specific and articulable facts, along with reasonable inferences therefrom, which in light of the experience and general knowledge of the officer reasonably warrant such an intrusion. *Armstrong v. State*, 550 S.W.2d 25, 30–31 (Tex.Crim.App.1977) (opinion on motion for rehearing).

 A resume of the facts or circumstances existent at the time the officers detained appellant shows that the officers were aware that a robbery had occurred ten to fifteen minutes earlier at a location in close proximity to their location. The robbery was committed by three black males. In a neighborhood where the majority of the houses were vacant, in the very early morning hours, they saw two black males, at least one of whom was attired in a manner somewhat similar to that described in the broadcast, "jogging" down the middle of the road. As the officers approached, the individuals started running and ducked into an alley, with one of them running behind a house and lying down in some weeds. Another officer, being cognizant of those facts and seeing an arrest made, continued the search and discovered appellant within fifteen yards of the first suspect, in an adjacent back yard lying in rubble consisting of old tires and empty five-gallon paint cans. We believe that this combination of events constitutes exactly the type of specific and articulable facts which would give rise to a reasonable suspicion by a competent officer that something out of the ordinary had occurred which was probably illegal in nature. We find that the initial detention of appellant was reasonable and justifiable and that the ensuing circumstances justified the arrest and search of appellant.

In his argument that the initial detention was illegal, appellant places primary reliance upon the case of *Faulk v. State*, 574 S.W.2d 764 (Tex.Crim.App.1978), which, he says, involves very similar circumstances. We think that case is distinguishable. In *Faulk*, the victim reported she had just been robbed by a young black male wearing a multicolored shirt who fled on foot. The officer who stopped Faulk observed several vehicles heading east on a busy street six blocks from the scene of that robbery. One of the vehicles was occupied by a young black man, Faulk. The officer made a U-turn, at which time he observed the automobile driven by Faulk speed up slightly and Faulk bend forward and to the right and then reduce his speed. Faulk did not commit a traffic or any other offense within the officer's view. Those circumstances were not sufficient to constitute specific and articulable facts which would give rise to a reasonable suspicion of illegal activity. As the Court majority commented, the officer had only the fact that Faulk was a young black male to connect him to that robbery and that simply was not sufficient. *Id.* at 766. For reasons enumerated above, the circumstances in

this case are quite different and did constitute probable cause for appellant's initial investigative detention.

Appellant's grounds of error are overruled, and there being no reversible error, the judgment of the trial court is affirmed.