Opinion issued August 22, 2002




 




 





In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01260-CR

____________


JASON KEDRICK SIMS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Criminal Court at Law No. 5

Harris County, Texas

Trial Court Cause No. 1007693






O P I N I O N

 After the trial court denied his pretrial motion to suppress evidence, Jason
Kedrick Sims, appellant, pleaded no contest to possession of marihuana in a useable
quantity of less than two ounces. Pursuant to a plea bargain agreement, the trial court
assessed punishment at 30 days in jail. In one point of error, appellant argues the trial
court erred when it denied his motion to suppress evidence. We affirm.

Background


 Around midnight on June 23, 2000, Harris County Deputy Sheriff Ron Rooth
responded to a domestic disturbance at the Polly Apartments. Three officers were at
the apartment when he arrived, and the officers told Rooth that a black male,
"younger in age" had left the scene before they arrived.

 While walking to his patrol car, Deputy Rooth saw appellant walking in the
apartment complex's courtyard, heading in the general direction where the
disturbance occurred. Appellant, who matched the suspect's description, appeared
to be intoxicated (1) and was carrying a 40-ounce can of Schlitz malt liquor. 

 Deputy Rooth testified appellant denied being involved in the disturbance and
said he was on his way to his "baby's mother's house." When Rooth asked for
appellant's identification, he said he had none, but stated his name was "Jason
Simms" and provided his date of birth. Deputy Rooth asked appellant to come to the
patrol car so he could determine if appellant was involved in the disturbance. He
patted appellant down, and placed him in the back of the patrol car where the back
doors were locked. Rooth ran a computer check on the name "Jason Simms," but was
unable to obtain any information.

 Leaving appellant in the locked patrol car, Deputy Rooth walked to the
apartment appellant said he was visiting. The woman inside denied knowing
appellant. Rooth returned and again asked appellant his name, but appellant told
Rooth to call his girlfriend. Another officer, who had a cellular phone, called the
woman, and she admitted knowing appellant, but said that his last name was spelled
with one "m" and gave a different date of birth than appellant earlier reported. With
the new spelling of the last name and the new date of birth, a computer check
revealed that appellant had an outstanding arrest warrant from Mississippi.

 An hour after the initial stop, Deputy Rooth arrested appellant and drove him
to the police station. When he removed appellant from the back of the patrol car,
Rooth discovered a bag of marihuana under the back seat. Rooth testified that he had
searched the patrol car before he began his shift, there were no narcotics in it, and
appellant was the first person in the back seat of the patrol car since the beginning of
Rooth's shift.

Motion to Suppress


 In his only point of error, appellant argues the trial court erroneously denied
his motion to suppress evidence obtained subsequent to an illegal detention.

 In reviewing a motion to suppress evidence, we give great deference to a trial
court's determination of historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). Mixed questions of law and fact that turn on the credibility and
demeanor of a witness are reviewed under the almost-total-deference standard, and
mixed questions of law and fact that do not turn on the credibility and demeanor of
a witness are reviewed de novo. Id. Also, we examine the evidence in the light most
favorable to the trial court's ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999). When the trial court does not file findings of fact, we assume that
the trial court made implicit findings that support its ruling, so long as those implied
findings are supported by the record. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000).

Investigative Detention

 Citing Brown v. State, 481 S.W.2d 106 (Tex. Crim. App. 1972) and Faulk v.
State, 574 S.W.2d 764 (Tex. Crim. App. 1978), appellant contends the "general
description of 'young black male,' without any description to distinguish the alleged
suspect from the general populace, does not rise to the level of reasonable suspicion
to allow a lawful detention." In Brown, a Dallas police officer followed a car
containing four men who "fit the general description" of persons who had committed
an armed robbery the day before. Brown, 481 S.W.2d at 108. The description
consisted only of a designation as to race and an approximation as to height and
weight. Id. While following them, the back seat occupants turned to look at the
officer, and the officer believed their body language indicated they were attempting
to conceal a weapon. Id. The police officer called for back-up and continued to
follow the car. The driver of the car stopped the car and walked back to ask the
police officer why he was following him. Id. at 108-09. The driver produced his
identification and then went back to his car and waited for the back-up to arrive. Id. 
When the back-up arrived, the four men and the car were searched. No weapons or
contraband were found on the men, but some ammunition was found in the glove
compartment, and a baggie of marihuana was found behind the back seat armrest. 
Several weapons and ammunition were found in the trunk. Id. at 109. 

 The Court of Criminal Appeals found the police officer lacked specific
information linking the men to the armed robbery; therefore, he lacked probable cause
to arrest or search them. Id. at 111. Additionally, the Court held that to constitute
probable cause, it must assume (1) the men recognized the unmarked police car; (2)
the gestures were in response to that awareness; and (3) the gestures were purposely
made to avoid apprehension. The Court reversed and held the chain of inferences was
too tenuous to establish even probable cause for an investigative stop. Id. at 112. 

 In Faulk, a Lubbock police officer heard on his radio that a "young black male
wearing a multicolored shirt" had just robbed a convenience store and was headed
south of the store on foot. Faulk, 574 S.W.2d at 765. Approximately two miles from
the scene of the crime, the officer noticed a black male driving a car. He saw the car
speed up slightly and then slow down as the driver leaned forward and to the right. 
Id. At no time were any traffic violations committed in the officer's presence. The
officer stopped and searched the car. He discovered a hat and money pouch under the
seat and a weapon under the dash. Id.

 The Court of Criminal Appeals held that the officer's inarticulate hunch,
suspicion, or good faith was not enough for an investigatory stop simply because
Faulk was seen a short period of time after the robbery and close to the robbery scene. 
Id. at 767. 

 When Officer Rooth initially approached appellant, he conducted a specific
inquiry. He wanted to know if appellant was involved in the disturbance. Appellant
said he was not. Officer Rooth then asked appellant for identification. He had no
identification on him, but told Rooth his name and date of birth. Rooth took appellant
to his patrol car to run a computer check. He patted appellant down and placed him
in the backseat of the patrol car and locked the doors.

 We have previously held that, once a pat-down search takes place, a stop
becomes an investigative detention and not a consensual encounter. See Gamble v.
State, 8 S.W.3d 452, 453 (Tex. App.--Houston [1st Dist.] 1999, no pet.). An
investigative detention is generally justified if specific, articulable facts, taken
together with their rational inferences, lead the detaining officer to conclude that the
detainee may be associated with a crime. See Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct.
1868, 1880 (1968); Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997);
Gamble, 8 S.W.3d at 453. We review the totality of the circumstances. Woods, 956
S.W.2d at 38.

 Here, the bases for the detention were that appellant (1) was a young, black,
male, and (2) was walking in the courtyard of an apartment complex near where a
domestic disturbance had taken place. 

 Deputy Rooth testified he stopped appellant to find out if he was involved in
the disturbance, and the only reason for stopping him was that he fit the general
description of a young, black male that had been observed leaving the scene. He had
not seen appellant engage in any criminal activity, and he did not stop him because
he was carrying a beer. Rooth said he was more concerned about the disturbance than
appellant's possible inebriation; therefore, he did not do any field sobriety tests.

 Rooth testified he did not know how many apartments were in the apartment
complex, and the record does not indicate how far Rooth was from the disturbance
when he came across appellant. 

 Although the State argues appellant's intentional self-misidentification is
significant, it is the timing of the events that is significant. When Deputy Rooth
initiated his investigative detention, he did not know appellant's name was spelled
with one "m." Regardless, Texas Penal Code section 38.02 states that a person
commits the offense of failure to identify if:

 (a) . . . he intentionally refuses to give his name, residence address, or date of
birth to a peace officer who has lawfully arrested the person and
requested the information . . . [or]

 (b) . . . he intentionally gives a false or fictitious name, residence address, or
date of birth to a peace officer who has:

 (1) lawfully arrested the person;

 (2) lawfully detained the person; or

 (3) requested the information from a person that the peace officer has 
 good cause to believe is a witness to a criminal offense. 


Tex. Penal Code Ann.§38.02 (Vernon 2002). Appellant was not under arrest or
lawfully detained when he gave Deputy Rooth the incorrect spelling of his name, and
Rooth gave no testimony indicating he had good cause to believe appellant was a
witness to a crime. In fact, on cross-examination, Rooth was asked if the complainant
was available at the scene to identify appellant. Rooth testified the complainant was
still in the apartment complex, but he never attempted to get a better description of
the suspect or have the complainant identify appellant. 

 In order to justify an investigative detention, an officer must have specific,
articulable facts, which, in light of his experience and personal knowledge, together
with other inferences from those facts, would warrant the intrusion on the person
stopped for further investigation. Terry, 392 U.S. at 21, 88 S. Ct. 1880. These
specific and articulable facts must create a reasonable suspicion in the officer's mind
that some activity out of the ordinary is occurring or has occurred, some suggestion
to connect the detained person with the unusual activity, and some indication that the
activity is related to a crime. Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App.
1983). 

 Deputy Rooth testified the only reason he stopped appellant was that he fit the
description of the suspect -- he was a black male in his early 20s -- walking in the
apartment complex. These are not sufficient articulable facts to connect appellant
with the disturbance. 

 In this case, because the trial court denied the motion to suppress, the implied
finding is either that Deputy Rooth properly detained appellant or that a lawful arrest
attenuated the unlawful detention. 

Exclusion of Evidence 

 Having found appellant was improperly detained, we must determine whether
admission of the evidence was appropriate. Article 38.23 requires the exclusion of
evidence "obtained by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas." Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon Supp. 2002). Evidence should be excluded once a causal
connection between the illegality and the evidence is established. Roquemore v.
State, 60 S.W.3d 862, 872 (Tex. Crim. App. 2001). 

 The State argues that the discovery of the arrest warrant sufficiently attenuated
the illegal detention. The attenuation doctrine is applicable to article 38.23's
prohibition against evidence "obtained" in violation of the law because evidence
sufficiently attenuated from the violation of the law is not considered to be "obtained"
therefrom. If the evidence is not "obtained" in violation of the law, then its admission
into evidence is not in contravention of article 38.23. Thus, the attenuation doctrine
is not an exception to article 38.23, but rather is a method of determining whether
evidence was "obtained" in violation of the law. See Johnson v. State, 871 S.W.2d
744, 751 (Tex. Crim. App. 1994). 

 Here, it is undisputed that appellant's arrest, subsequent to the discovery of the
outstanding warrant, was legal. Once the outstanding warrant was discovered,
Deputy Rooth took appellant to the police station. The marihuana was discovered in
Deputy Rooth's patrol car after appellant got out of the car at the police station. The
marihuana was not obtained in violation of the law. It was obtained subsequent to
and pursuant to a lawful arrest. See Brooks v. State, 830 S.W.2d 817, 821 (Tex.
App.--Houston [1st Dist.] 1992, no pet.).

 We hold the trial court did not abuse its discretion when it overruled
appellant's motion to suppress evidence.

 We affirm the judgment of the trial court.



 Davie L. Wilson

 Justice


Panel consists of Justices Nuchia, Jennings, and Wilson. (2)


Publish. Tex. R. App. P. 47.










 
1. Officer Rooth admitted his offense report did not mention appellant's alleged
intoxication.
2. Justice Davie L. Wilson, who retired on March 31, 2002, continues to sit by
assignment for the disposition of this case, which was submitted on March 18,
2002.