Affirmed
and Opinion filed September 15, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00207-CR

NO. 14-08-00212-CR

____________

 

BRANDON DEMOND THOMAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause Nos. 47,806
& 46,233

 



 

O P I N I O N

Appellant Brandon Demond Thomas was
convicted of aggravated robbery in two causes and sentenced to fifty years= confinement in
the Institutional Division of the Texas Department of Criminal Justice in each
case to run concurrently.  In his sole issue on appeal, Thomas contends the
trial court reversibly erred in overruling his motion to suppress evidence.  We
affirm.








I

On the evening of February 2, 2007, a
group of people had just left the Los Flores restaurant in Fulshear when
several men robbed them at gunpoint.  Deputy Julie Delgado, a patrol officer,
was dispatched to the scene at 9:08 p.m.  Another officer, Deputy Schmidt,
informed her that there were five to seven suspects, who were black or Hispanic
males, wearing dark or black clothing, and one of them had bright red shoes. 
Delgado began walking the area with one of the victims looking for items,
including cash, that had been stolen.  Another officer, Deputy Larry Gammon,
accompanied them in his patrol car.  Just after 10:00 p.m., Delgado and Gammon
saw two black males walking together about a block from the location where the
robbery occurred.  One of the males was wearing bright red shoes, and the other
was wearing black pants, black shoes, and a white shirt like an undershirt. 
The man wearing the red shoes was later identified as Michael Trevino, and the
man with him was Thomas, the appellant.

Because Delgado knew that the robbers had
been armed, she patted the two men down but found no weapons.  The men told her
that they were going to the store to buy chips.  Thomas did not have a wallet,
so Delgado asked him how he was going to buy chips if he did not have any
money.  He turned to show her his pocket, and said, ALook, I=ve got money.@  Delgado
perceived Thomas=s body movement and invitation to Alook@ to be permission
to look in his pocket, so she checked his pocket and found several
hundred-dollar bills.  Knowing that the robbers had stolen cash from the
victims, Delgado became suspicious and asked Thomas what he did for a living. 
Thomas responded that he was unemployed and his girlfriend gave him the money. 
Delgado then detained Thomas until a K-9 unit could arrive.  While they were waiting,
Thomas complained that he was cold and so Delgado allowed him to sit in a
patrol car with the heater on.  Thomas was not handcuffed or under arrest at
that time, but he was not free to leave.








Deputy Gammon took scent samples from Thomas
and Trevino along with samples from the bills that had been recovered from
them.  Deputy Keith Pikett, a bloodhound handler with the Fort Bend County
Sheriff=s Department,
arrived with three of his dogs.  Gammon gave Pikett the scent pads he had
collected and Pikett took additional scent samples from the victims.  The dogs= reactions to the
money and the victims= scent pads indicated that the money found
on Thomas was taken from at least one of the victims.  A detective was called
to the scene and he arrested Thomas.  Sometime later, after Thomas was read his
Miranda warnings, he gave a videotaped statement that was later admitted
into evidence at trial over his objection.  From their interview of Thomas, the
police learned that he had driven Trevino and several others to the area where
the robbery took place in a car belonging to his girlfriend.  Inside the car,
the police found a black flight jacket, a black hooded jacket, gloves, a black
wave cap, Thomas=s social security card, and two wallets
belonging the robbery victims.

II

Thomas contends that he was detained,
searched, and arrested on insufficient probable cause, and that the evidence
used to convict him, specifically his possession of the victims= money, the
bloodhound evidence, and his statement, were obtained as a result of an illegal
search.

A








We review a trial court=s ruling on a
motion to suppress under an abuse-of-discretion standard.  Swain v. State,
181 S.W.3d 359, 365 (Tex. Crim. App. 2005).  We give almost total deference to
the trial court=s determination of historical facts, but
review de novo the trial court=s application of the of the law to these
facts.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  When,
as here, the trial court makes no findings of fact, we review the evidence in
the light most favorable to the trial court=s ruling and
assume that the record supports the trial court=s implicit fact
findings.  Carmouche v. State, 10 S.W.3d 323, 327B28 (Tex. Crim.
App. 2000).  If the trial court=s ruling is reasonably supported by the
record and is correct on any theory of law applicable to the case, we must
sustain it on review.  Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996).

In reviewing the trial court=s ruling, we
generally consider only the evidence adduced at the suppression hearing because
the ruling was based on it rather than evidence introduced after the hearing.  Gutierrez
v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); Rachal v. State,
917 S.W.2d 799, 809 (Tex. Crim. App. 1996).  But when the parties later
relitigate the suppression issue at the trial on the merits, we consider all
evidence, from both the pre-trial hearing and the trial, in our review of the
trial court=s determination.  Gutierrez, 221 S.W.3d at
687.  Here, the trial judge held a hearing on Thomas=s motion to
suppress, and at the conclusion of the hearing, he denied the motion.  At
trial, the parties relitigated the search-and-seizure issue by examining and
cross-examining Officer Delgado and Michael Muskarella, Jr., one of the
complainants, as they had during the hearing on the motion to suppress. 
Additional evidence was also adduced on the issue from other officers and the
victims of the robbery.  Therefore, we will consider the evidence presented at
both the suppression hearing and the trial.

B

Thomas first contends that there was
insufficient probable cause for his detention and arrest because the
description Delgado had of the robbersCthat they were
five to seven black or Hispanic males wearing all dark clothing with one
wearing red shoesCwas insufficient to justify detention or
arrest.  Thomas argues that the only part of the description he satisfied was
that he was a black male in close proximity to the robbery scene one hour
later, and his clothing did not match the description because he was wearing a
white shirt.  He also asserts that the victims appeared unsure of the race of
the robbers and none gave any height, weight, or other distinguishing factors. 
Further, Thomas notes that he was not committing any crime when Delgado
approached him and he was unarmed.








A police officer must have reasonable
suspicion of criminal activity to begin an investigative detention.  See
Terry v. Ohio, 392 U.S. 1, 30 (1968); Woods v. State, 956 S.W.2d 33,
35 (Tex. Crim. App. 1997).  We determine the reasonableness of an investigative
detention by examining the totality of the circumstances.  Woods, 956
S.W.2d at 38.  A police officer may stop and briefly detain a person for
investigatory purposes if the officer has a reasonable suspicion supported by
articulable facts that the person detained is, has been, or soon will be
engaged in criminal activity.  Id.  Whether a detention is reasonable
under the totality of the circumstances turns on the content and reliability of
the information the officer possesses.  Alabama v. White, 496 U.S. 325,
330 (1990).

Thomas contends that this case is akin to Faulk
v. State, 574 S.W.2d 764 (Tex. Crim. App. 1978).  In that case, a young,
black male wearing a multicolored shirt committed an armed robbery and then
fled on foot.  Id. at 765.  The court held that an officer who stopped
the defendant=s car shortly after the armed robbery and removed him
from the car at gunpoint did not have reasonable suspicion or probable cause to
stop the defendant on the basis of a description of the robber as a young,
black male and furtive gestures he made as the officer followed him.  Id.
at 766.  The court determined that the only fact connecting the defendant to
the robbery was that he was a young, black male.  Id.  

But Thomas=s argument fails
to appreciate all of the facts Deputy Delgado knew when she stopped Thomas. 
Here, Delgado had several articulable facts that under the circumstances
supported a reasonable suspicion that Thomas was involved in some criminal
activity.  Thomas and Trevino fit the description the victims gave:  black or
Hispanic males in dark or black clothing, one of whom was wearing bright red
shoes.  And the two were seen within one hour of the robbery near the location
where it occurred.  Faulk is distinguishable because Delgado was able to
match considerably more than a single aspect of the robbers= physical
description.








Moreover, Thomas=s contention that
he did not match the description given because he had on a white shirt is not
persuasive.  Michael Muskarella, one of the complainants, testified that the
robbers wore large, bulky clothing, including hooded jackets or bandanas to
cover their faces.  Likewise, Deputy Gammon recalled at trial that the suspects
were described as wearing bandanas or hooded jackets.  The robbery occurred in
February, and there was testimony that it was cold outside, so Delgado could have
reasonably determined that Thomas had removed his jacket earlier to evade
identification.  This conclusion is further supported by Delgado=s description of
Thomas=s white shirt as
an undershirt and her testimony that Thomas complained that he was cold and so
voluntarily sat in a patrol car with the heater running.  

Additionally, Delgado was justified in
patting down both Thomas and Trevino.  The two matched the description of the
robbery suspects Delgado had been given.  Delgado also knew that weapons were
involved in the robbery and that the suspects might be armed.  An officer may
conduct a limited search for weapons, even in the absence of probable cause,
when the officer reasonably believes that a suspect is armed and dangerous.  Carmouche,
10 S.W.3d at 329.  Therefore, the evidence supports the trial court=s implied finding
that the temporary detention and pat down of Thomas was reasonable and
justified.

C

Thomas next contends that Delgado did not
have consent to search his pocket and seize the money found in it.  Thomas
argues that he merely stated, in response to Delgado=s questions, that
he had money, and that this did not constitute consent.  

Consent to search is one of the
well-established exceptions to the constitutional requirements of both a
warrant and probable cause.  Schneckloth v. Bustamonte, 412 U.S. 218,
219 (1973); Carmouche, 10 S.W.3d at 331.  The State must show by clear
and convincing evidence that the consent was freely given.  Carmouche,
10 S.W.3d at 331.  Whether consent was voluntary involves a question of fact
that is determined from the totality of the circumstances.  Johnson v. State,
226 S.W.3d 439, 443 (Tex. Crim. App. 2007).  We review a finding of voluntary
consent for abuse of discretion.  Id.








Thomas cites Ashton v. State to
support his contention that he did not impliedly consent to the search.  See
931 S.W.2d 5 (Tex App.CHouston [1st Dist.] 1996, pet.ref=d).  In that case,
the defendant was arrested for public intoxication and placed in a patrol car. 
Id. at 6.  The officer requested identification and the defendant told
him it was in her purse in the car.  Id.  The officer then searched the
purse and found the defendant=s identification next to a clear plastic
bag containing cocaine.  See id.  The court upheld the search as one
incident to an arrest, but declined to comment on the State=s argument that
the defendant gave express or implied consent to retrieve her identification
from her purse, noting that the Court of Criminal Appeals had not addressed the
issue of implied consent in similar circumstances.  Id. at 8.  Instead,
the court determined that nothing in the record indicated that the defendant
consented to a search of her purse after Amerely informing
the officer of the location of her identification.@  Id.








More recently, in Baldwin v. State,
the Court of Criminal Appeals held that a police officer exceeded his authority
during a suspect=s detention when, after asking the
handcuffed suspect where his identification was located, the officer reached
into the suspect=s pocket to retrieve his wallet.  278
S.W.3d 367, 369 (Tex. Crim. App. 2009).  In Baldwin, an officer
encountered the appellant, who was dressed in black and walking down a
sidewalk, after receiving a report of a white male dressed in black walking around
looking into houses.  Id. at 369.  There had also been several
burglaries in the neighborhood.  Id. at 370.  The appellant did not
directly answer the officer=s questions and he appeared Aanxious and
nervous,@ so the officer
handcuffed him.  Id.  The officer then asked the appellant where his
identification was, and the appellant replied that it was in his right pants
pocket.  Id.  The officer, believing that this response constituted
permission to reach into appellant=s pocket, did so
and retrieved a small wallet.  Id.  When the officer removed the license
to examine it, he saw behind it a small baggie containing cocaine.  Id. 
On review, the Court of Criminal Appeals held that the officer did not have
probable cause to arrest the appellant or to reach into his pocket to retrieve
his identification.  Id. at 371B72.  Further, the
court held that the officer=s belief that he had consent to search the
appellant=s pocket was objectively unreasonable because the
appellant=s response was simply an answer to the officer=s question
regarding the location of his identification and not a consent for the officer
to search his person.  Id. at 372.

Baldwin and Ashton
are distinguishable from this case, however, because Thomas did not merely tell
Delgado where his money was located.  Here, after Delgado patted down Thomas
and Trevino, she asked if they had any identification on them.  Trevino stated
that he had a wallet, but Thomas said that he did not have a wallet with him. 
Delgado then asked Thomas and Trevino what they were doing and where they were
going, and they responded that they were going to buy chips.  Delgado asked
Thomas how he was going to buy chips when he had no wallet.  Delgado testified
that Thomas seemed Aalmost offended@ and he Aput his hands up
and turned and gave [her] his pocket@ as he said AI=ve got money@ and Alook.@ 








Although Delgado acknowledged that she did
not expressly ask for permission to search Thomas=s pocket, based on
Thomas=s putting his
hands up, Aput[ting] his hip towards [her],@ and inviting her
to Alook,@ she believed that
he was giving her permission to search his pocket to retrieve his money. 
Thomas did not testify and there was no other contradictory evidence concerning
this exchange.  Voluntary consent to search has been found in similar
circumstances in which the consent was not expressly given.  See, e.g., Gallups
v. State, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (defendant Amotioned for [the
officer] not only to >come forward= into his home but
also to >come in,=@ and gestured with
his A>hand being
extended out and coming back toward him=@); Kendrick v.
State, 93 S.W.3d 230, 234 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d (appellant indicated his consent to a
pat-down search by standing up and raising his hands); Simpson v. State,
29 S.W.3d 324, 329 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d) (appellant
consented to search of his car by nodding his head affirmatively, even though
he testified that he did not give consent).  Although it may have been
preferable for Delgado to expressly request permission to search Thomas=s pocket, under
these facts, we cannot say that the trial court abused its discretion in
determining that Thomas consented to the search. 

D

Thomas contends that his detention and
later arrest were the result of the allegedly illegal actions of which he
complains, and for the same reasons the recovery of the money, the K-9
evidence, and his recorded statement were the fruit of an illegal detention and
search.  But because we have determined that the trial court did not err in
determining that the officer=s actions were not illegal, we conclude
that Thomas=s detention and later arrest likewise were not illegal
and the evidence obtained as a result was not inadmissible. Therefore, we
overrule Thomas=s issue concerning the trial court=s denial of his
motion to suppress.

* * *

We overrule Thomas=s issue and affirm
the trial court=s judgment.

 

 

 

 

/s/      Jeffrey
V. Brown

Justice

 

 

Panel consists of Justice Seymore
and Justices Brown and Sullivan.

Publish C Tex.
R. App. P. 47.2(b).