Affirmed and Opinion filed December 22, 2005









Affirmed and Opinion filed December 22, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00979-CR

____________

 

RONALD JOHNSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 973,124

 



 

O P I N I O N

Appellant Ronald Johnson appeals his
conviction for burglary of a habitation.[1]  In two points of error, appellant contends
that (1) the trial court erred by failing to bar evidence about a camera police
found in appellant=s pocket when he was seized and (2) the
trial court erred by refusing to suppress testimony about appellant=s identification
at the Ashow up@ at the
complainant=s house. 
Appellant argues that the elimination of the challenged evidence renders
the remaining evidence legally insufficient to support his conviction.  We affirm.








Background

Around 2:30 a.m. on January 6, 2004,
eighty-two-year-old complainant Myrtis Perkola awoke to strange noises in her
house.  Thinking that her grandson was
making the noises, Perkola got out of bed to investigate.  When she turned on the lights and entered the
family room, Perkola noticed a pile of clothes on the floor.  However, when she poked the clothes with her
cane, she realized that a person was lying on the floor.  Afraid that her grandson might be sick,
Perkola spoke, and the person on the floor mumbled in response.  Perkola told the person to get up, which he
did, but he kept his face covered. 
Perkola then realized that the person was an intruder. 

Perkola pushed her alarm button and
reported that a burglar was in her house. 
Meanwhile, the intruder escaped. 
A few minutes later, three police officers arrived at Perkola=s house.  Perkola described the intruder as a large,
stocky black man wearing a tan or gray hooded fleece jacket. Officers O=Leary and
Sanderson then began to canvass the neighborhood for the burglar while Sergeant
Milligan remained at Perkola=s house.

About a quarter mile from Perkola=s house, O=Leary noticed
appellant riding a bicycle.  Appellant
matched the description of a large black man wearing a tan fleece and was the
only person in the area.  When appellant
saw O=Leary=s patrol car, he
tried to turn around but fell off the bicycle and dropped a bag he was
carrying.  When O=Leary made a
u-turn, appellant remounted the bicycle and eventually entered a Phillips 66
convenience store.  While appellant was
inside, O=Leary radioed that he had located a person
matching the description of the burglar. 








Sanderson joined O=Leary just as
appellant was coming out of the convenience store and told him to approach the
patrol car.  Sanderson told appellant
that he was not under arrest; Sanderson also informed appellant that he was
conducting a robbery investigation and needed appellant to accompany him for
identification purposes.  Sanderson
handcuffed appellant and performed a pat-down search for weapons, during which
he recovered a small 35-mm camera from appellant=s jacket
pocket.   Sanderson put appellant in the
back seat of the car and proceeded to Perkola=s house to
determine whether she could identify appellant as the burglar.  Meanwhile, O=Leary retrieved
the bag appellant had dropped and discovered that it contained paper towels and
toilet paper. 

When Sanderson arrived at Perkola=s house, he parked
the patrol car at the curb, turned on the dome light, and partially rolled down
the window.  Sanderson then asked if
Perkola was missing a camera.  Perkola
went to retrieve her camera and realized that it was indeed missing.  Sanderson showed Perkola the camera he had
discovered and told her that he had found it in appellant=s pocket.[2]  Perkola stated that the camera looked just
like her own Canon Sure Shot camera.

As Sanderson and Milligan escorted Perkola
to the patrol car, Perkola asked them to roll down the car window.   She then called out to appellant and asked
if he had broken into her home.  When
appellant mumbled in reply, Perkola said that he sounded exactly like the
burglar.  Because of her poor eyesight,
Perkola stood close to the car in order to see appellant.[3]  When the officers shined their flashlights
inside the car, Perkola identified appellant=s jacket as the
one the intruder had been wearing. At that point, Sanderson arrested appellant
for burglary of a habitation.








At the suppression hearing, the parties
stipulated that the police did not have a warrant and did not observe appellant
committing a felony at the time of the encounter.  Sanderson also identified appellant as the
person he had detained.  The trial judge
denied defense counsel=s motions to suppress evidence of the
camera and the identification.  At trial,
Perkola testified about the show-up but did not identify appellant in court.[4]  However, the officers testified that Perkola
had identified appellant as the burglar out of court.  The trial judge denied defense counsel=s motion for a
directed verdict at the end of trial. 
The jury convicted appellant of burglary of a habitation and sentenced
him to fifty years= confinement after finding enhancement
allegations in the indictment to be true. 


Appellant now argues that the trial court=s denial of the
motions to suppress violated his right to due process under the Texas and
United States constitutions.  First,
appellant argues that the trial court erred by failing to suppress evidence
concerning the camera because it was the fruit of an arrest that lacked
probable cause.  Alternatively, appellant
argues that even if the encounter with Sanderson did not rise to the level of
an arrest, it was an invalid Terry stop because (1) the officers lacked
reasonable suspicion to detain appellant, 
and (2) the search was overly broad. 
Secondly, appellant argues that the trial court erred by failing to
suppress testimony about the show-up at Perkola=s house because
the procedure was impermissibly suggestive and conducive to a serious risk of
misidentification.  

Standards of Review








We review a trial court=s ruling on a
motion to suppress under an abuse of discretion standard.  Gaines v. State, 99 S.W.3d 660, 665
(Tex. App.CHouston [14th Dist.] 2003, no pet.)
(citing Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996)).  Under this standard, we give
almost total deference to a trial court=s determination of
historical facts supported by the record, especially when the trial court=s fact findings
are based on an evaluation of credibility and demeanor.  Id. (citing Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). 
We give the same amount of deference to a trial court=s ruling on Aapplication of law
to fact questions@Calso known as Amixed questions of
law and fact@Cif the resolution
of those ultimate questions turns on an evaluation of credibility and
demeanor.  Id. at 665-66.  We review de novo mixed questions of law and
fact that do not turn on an evaluation of credibility and demeanor.  Id. at 666.

When, as in this case, the trial court
makes no explicit findings of historical fact, we presume that it made those
findings necessary to promote its ruling, provided that they are supported in
the record.  Id. (citing Carmouche
v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000)).  When reviewing a trial court=s ruling on mixed
questions of law and fact, we view the evidence in the light most favorable to
the trial court=s ruling. 
Guzman, 955 S.W.2d at 89.  

We review a trial court=s decisions
regarding detention, probable cause, and reasonable suspicion de novo.  Loserth v. State, 963 S.W.2d 770, 773
(Tex. Crim. App. 1998).  We also review a
trial court=s ruling on the admissibility of an
out-of-court identification de novo.  Santos
v. State, 116 S.W.3d 447, 455 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d); Vasquez v. State, 101 S.W.3d
794, 796 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).

Arrest v. Detention

Appellant argues that his encounter with
Sanderson was an arrest because Sanderson handcuffed appellant before searching
him and failed to question him.  Appellant
claims that this arrest was unconstitutional because Sanderson lacked probable
cause.  Alternatively, appellant argues
that even if the encounter did not rise to the level of an arrest, it was an
invalid investigatory stop because Sanderson did not have reasonable suspicion
to detain him.  We disagree with both
contentions and hold that the encounter constituted a valid investigatory stop
supported by reasonable suspicion.








Whether a detention is an investigative
detention or an arrest depends upon the facts and circumstances surrounding the
detention.  Amores v. State, 816
S.W.2d 407, 412 (Tex. Crim. App. 1991). 
Although appellant argues that the use of handcuffs transformed his
encounter with Sanderson into an arrest, handcuffing alone does not necessarily
convert a temporary detention into an arrest. 
Goldberg v. State, 95 S.W.3d 345, 360 (Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d); Nargi v. State, 895 S.W.2d 820,
822 (Tex. App.CHouston [14th Dist.] 1995, pet. dism=d) (citing Hilla
v. State, 832 S.W.2d 773, 778 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d)). 
Instead, courts look to the reasonableness of the officer=s actions, judged
from the perspective of a reasonable officer at the scene.  Goldberg, 95 S.W.3d at 360 (citing Rhodes
v. State, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997)).  Factors to consider include: (1) the need to
gain control over the suspect; (2) the use of force, including the display of
weapons; (3) use of handcuffs; (4) length of detention; (5) admonitions of the
detaining officer; (6) reasonable perception of the detainee as to his status;
(7) movement of the detainee; (8) the overall intrusiveness of the
detention;  and (9) the opinion of the
detaining officer as to the status of the detention.  Nargi, 895 S.W.2d at 822.  Police may use such force as is reasonably
necessary to effect the goal of the detention: investigation, maintenance of
the status quo, or officer safety.  Goldberg,
95 S.W.3d at 360 (citing Rhodes, 945 S.W.2d at 118)).  An investigative detention implies that the
obtrusive act is for the purpose of actually investigating; where no
investigation occurs, the detention cannot be considered investigatory and
therefore rises to the level of an arrest. 
Goldberg, 95 S.W.3d at 360 (citing Burkes v. State, 830
S.W.2d 922, 925 (Tex. Crim. App. 1991)). 
Ultimately, the focus is not whether a less intrusive means of gaining
control of the situation was available, but whether the police officer was
unreasonable in failing to use it.  Nargi,
895 S.W.2d at 822. 








We hold that Sanderson=s actions were
reasonable and that his encounter with appellant was an investigatory
detention, not an arrest.  When Sanderson
saw appellant, he simply asked him to approach the patrol car; there is no
evidence that Sanderson drew his weapon at any time during the encounter.  Additionally, before handcuffing appellant,
Sanderson explained that he was conducting a burglary investigation and that he
needed appellant to accompany him for identification purposes.  Sanderson also informed appellant that he was
not under arrest; in fact, Sanderson did not arrest appellant until after
Perkola had identified him as the burglar. 
Therefore, although he did not question appellant, Sanderson  clearly expressed that he initially had
detained appellant for investigatory purposes. 
Furthermore, although Perkola did not mention that the burglar had been
armed, Sanderson testified that he had handcuffed appellant out of concern for
his own safety.  We believe that this is
a reasonable precaution for an officer who is transporting a suspect
unaccompanied by other officers. 
Finally, while appellant likely did not feel free to leave while in the
back of Sanderson=s car, the detention was short-lived;
Sanderson drove immediately to Perkola=s house, which was
only a quarter-mile away.  Therefore, we
hold that Sanderson did not act unreasonably in handcuffing appellant and that
the encounter was an investigative detention, not an arrest.

Reasonable Suspicion

We also hold that Sanderson had a reasonable
suspicion to detain appellant.  A police
officer may stop and briefly detain a person for investigative purposes if the
officer, in light of his experience, has a reasonable suspicion supported by
articulable facts that criminal activity might be afoot.  Goldberg, 95 S.W.3d at 360 (citing Terry
v. Ohio, 392 U.S.1, 30 (1968)).  The
reasonableness of a temporary detention must be examined in terms of the
totality of the circumstances.  Id.
(citing Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)).  A temporary detention is justified when the
detaining officer has specific, articulable facts at the time of the detention
which, taken together with rational inferences from those facts, lead him to
conclude that the person detained is, has been, or soon will be engaged in
criminal activity.  Id.  A reasonable suspicion means more than a mere
hunch or suspicion.  Id. (citing Davis
v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)).  A detention is not permissible unless the
circumstances objectively support a reasonable suspicion of criminal
activity.  Id.








Perkola described the burglar as a large,
stocky black man wearing a gray or tan hooded fleece jacket.  Only several minutes after the incident,
Sanderson saw appellant roughly a quarter-mile away from Perkola=s house.  Appellant, who matched Perkola=s description of
the burglar, was the only person in the vicinity.  When appellant saw Sanderson=s car, he appeared
startled, fell off his bike, and headed in the opposite direction.  In light of the totality of the
circumstances, these facts objectively support a reasonable suspicion that
appellant had been involved in criminal activity, namely the burglary of
Perkola=s house.  See, e.g., White v. State, 695 S.W.2d
799, 801-802 (Tex. App.CAmarillo 1985, no pet.) (holding that
officers had  reasonable suspicion to
detain black men wearing white shirts who were near crime scene late at night
and ran when they saw police, when robbery victim had described perpetrators as
black men wearing yellow shirts); see also Foster v. State 779 S.W.2d
845, 859 (Tex. Crim. App. 1989) (stating that inference of guilt may be drawn
from evidence of flight). 

Appellant argues that Sanderson could not
have had a reasonable suspicion to detain him simply because appellant matched
a general description of the burglar, was in Perkola=s neighborhood in
the middle of the night, and made a u-turn when he noticed Sanderson=s patrol car.  Appellant relies on Gamble v. State,
where the court held that officers did not have a reasonable suspicion that the
defendant possessed drugs simply because (1) the area had a history of drug
sales;  (2) the police had answered
frequent calls to the area over the last year; (3) it was 3:00 a.m.; (4)
appellant was standing near a residence to which the officers had been called
in the past, but at which they had never made arrests for drugs or
weapons;  and (5) appellant watched the
marked police car and walked away from it when it turned around.  8 S.W.3d 452, 454 (Tex. App.CHouston [1st
Dist.] 1999, no pet.).  However, unlike
in appellant=s case, the officers in Gamble were
simply performing a routine patrol; they did not have a description of any
particular suspect and were not canvassing the neighborhood for the perpetrator
of a recently-committed crime.  Id.
at 453.  We find this to be an important
distinction in determining that Sanderson had a reasonable suspicion to detain
appellant.








Appellant also relies on Sims v. State to
support his position that a general description cannot give rise to a
reasonable suspicion.  84 S.W.3d 805, 810
(Tex. App.CHouston [1st Dist.] 2002, no pet.).  However, we also find that case to be
distinguishable.  In Sims, the
witnesses described the suspect as a black male, Ayounger in age,@ walking around an
apartment complex.  Id. at
807.  The detaining officer testified
that he stopped the defendant because the defendant, who was a black man in his
early twenties, matched this general description.  Id. at 809.  The court held that there were not sufficient
articulable facts to connect appellant with the offense.  Id. at 810.  However, Perkola=s description of
appellant is more specific than the description of the suspect in Sims.  Although appellant argues that he simply
happened to match the vague description of a Alarge, black male,@ officers were
actually looking for a large, stocky black man wearing a hooded gray or tan
fleece jacket.  In light of the totality
of the circumstances, this description was sufficiently specific to give rise
to a reasonable suspicion that appellant had burglarized Perkola=s house.

Overly Broad Search

Appellant also argues that evidence
concerning the camera should have been suppressed because Sanderson=s search was
overly broad.  However, because appellant
did not object on these grounds during the suppression hearing or at trial, he
cannot raise the issue on appeal.  Tex. R. App. P. 33.1(a) (stating that
the record must show that the complaint was made to the trial court by timely
request, objection, or motion that states grounds with sufficient specificity).[5]  An objection stating one legal basis may not
be used to support a different legal theory on appeal.  Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990).  Therefore, we
will not address whether the search that uncovered the camera was overly
broad.  Because appellant=s encounter with
Sanderson constituted an investigatory detention supported by reasonable
suspicion, and appellant failed to preserve the issue of whether the search was
overly broad, we hold that the trial court did not err by failing to bar
evidence about the camera found in appellant=s pocket.  Accordingly, we overrule appellant=s first point of
error.








Identification

In his second point of error, appellant
contends that Perkola=s out-of-court show-up identification
should have been suppressed.  Appellant
argues that the identification was impermissibly suggestive and created a very
substantial risk of misidentification in violation of his right to due
process.  Appellant also asserts that the
elimination of the challenged evidence renders the remaining evidence legally
insufficient to support his conviction.

 
When faced with a challenge to an out-of-court identification, courts
must look to the totality of the circumstances surrounding the identification
to determine whether the procedure was so unnecessarily suggestive and
conducive to irreparable mistaken identification that the defendant was denied
due process of law.  Vasquez, 101
S.W.3d at 796 (citing Webb v. State, 760 S.W.2d 263, 272 (Tex. Crim.
App. 1988)).  First, we must determine
whether the pretrial identification procedure was impermissibly
suggestive.  Santos, 116 S.W.3d at
455; Vasquez, 101 S.W.3d at 796 (citing Barley v. State, 906
S.W.2d 27, 33-34 (Tex. Crim. App. 1995)). 
Secondly, if the procedure was impermissibly suggestive, we must examine
the reliability factors enumerated in Neil v. Biggers to determine
whether the procedure gave rise to a very substantial likelihood of
misidentification.  409 U.S. 188, 198
(1972); see also Santos, 116 S.W.3d at 455; Vasquez, 101 S.W.3d
at 796.  The party challenging the
identification must show impermissible suggestion and a very substantial
likelihood of misidentification by clear and convincing evidence.  Barley, 906 S.W.2d at 33-34.

Impermissibly Suggestive








We hold that the show-up was impermissibly
suggestive in this case.  Although single
suspect show-ups do not necessarily violate a defendant=s right to due
process, courts traditionally have viewed them with suspicion.  Biggers, 409 U.S. at 198; Garza v.
State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982); see also Delk
v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993) (holding that use of
photo was impermissibly suggestive when police presented it as a photo of the
person who was in custody and under indictment for committing the offense); Santos,
116 S.W.3d at 453 (holding that home video was impermissibly suggestive when
defendant was the only person who appeared in both the video and the line-up); Pace
v. State, 986 S.W.2d 740, 745 (Tex. App.CEl Paso 1999, pet.
ref=d) (holding that
show-up during which victim identified suspect as her attacker three hours
after assault occurred was impermissibly suggestive); Loserth v.
State, 985 S.W.2d 536, 543 (Tex. App.CSan Antonio 1998,
pet. ref=d) (holding that
showing witness a lone photograph of defendant was impermissibly suggestive).

Here, appellant was the only suspect
police presented to Perkola. 
Additionally, Perkola saw appellant handcuffed in the back of a police
car after Sanderson had informed her that he had found her missing camera in
appellant=s pocket. 
Under these circumstances, Perkola very likely thought that the officers
believed appellant to be the burglar.  Accordingly,
we find that the show-up was impermissibly suggestive.

Likelihood of Misidentification

We hold that appellant failed to prove by
clear and convincing evidence that the identification gave rise to a very
substantial likelihood of misidentification. 
When determining whether an identification gives rise to a very
substantial likelihood of misidentification, a reviewing court must consider
the following non-exclusive Biggers factors: (1) the witness=s opportunity to
view the criminal act; (2) the witness=s degree of
attention; (3) the accuracy of the description of the suspect; (4) the level of
certainty at the time of confrontation; (5) the time between the crime and
confrontation.  Barley, 906 S.W.2d
at 34-35 (citing Biggers, 409 U.S. at 198)).  Biggers factors are issues of
historical fact, which a court should view deferentially in a light favorable
to the trial court=s ruling. 
Loserth, 963 S.W.2d at 773-74. 
The court then should weigh these factors de novo against the corrupting
effect of the suggestive pretrial procedure. 
Id. 








First, the record indicates that Perkola
had ample opportunity to observe the burglar both visually and aurally.   After turning on the light, Perkola saw a
person hunched on the floor and heard him speak in a mumbling type of
speech.  Although the burglar covered his
face when he stood up, Perkola had several minutes to observe his clothing, his
race, and his body type.  Furthermore,
since Perkola poked the burglar with her cane, her observations took place at
very close range.  

Secondly, there is evidence that Perkola
was attentive during the incident. 
Before the burglar escaped, Perkola poked him, asked him a question, and
elicited a response.  Additionally,
because Perkola was the victim rather than a casual observer, she likely paid
close attention to the burglar=s appearance.  See Cantu v. State, 738 S.W.2d 249
(Tex. Crim. App. 1987) (stating that a witness who is also a victim normally
has a greater degree of attention than a casual bystander).  

Third, Perkola=s description of
the burglar and appellant=s appearance were consistent.  Although the testimony differs about the
color of the jacket, the record indicates that Perkola described the burglar as
wearing a hooded jacket made of fleece or a similar soft material.  Additionally, Perkola described the burglar
as a large, stocky black male.  

Fourth, Perkola demonstrated certainty
that appellant was the burglar when she saw him in the patrol car.  Although she asked appellant if he had been
in her house as she approached the vehicle, Perkola unequivocally identified
appellant as the burglar when she stood close to the window.  Perkola also stated that appellant=s mumbling speech
and the burglar=s speech sounded exactly the same.  








Finally, very little time elapsed between
the burglary and the identification. 
Police arrived at Perkola=s house less than
five minutes after she called for assistance, and Sanderson located and brought
appellant to Perkola=s house shortly thereafter.[6]  This proximity of time suggests that Perkola=s memory of the
intruder was still fresh when she identified appellant as the burglar;
therefore, her identification was reliable. 
See Rojas v. State, 171 S.W.3d 442, 449 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (holding that under the totality of the circumstances, a
photographic lineup occurring five days after the crime did not suggest a
substantial likelihood of misidentification); Stokes v. State, No.
03-02-00508-CR, 2003 WL 21401267, at *3 (Tex. App.CAustin June 19,
2003, no pet.) (not designated for publication) (stating that thirty to
forty-five minutes is a very short period between crime and confrontation and
noting that the Court of Criminal Appeals has found confrontations that
occurred five months after the crime to be sufficiently reliable).

Weighing these factors against the
corruptive effect of the impermissibly suggestive procedure, we hold that
appellant has failed to demonstrate by clear and convincing evidence that there
was a very substantial likelihood of misidentification.  While the knowledge that appellant possessed
her camera certainly could have influenced Perkola to identify appellant as the
burglar, under the totality of the circumstances, its corruptive effect does
not outweigh the substantial evidence of reliability.  Therefore, we hold that the trial court did
not err by refusing to suppress testimony about the show-up
identification.  Because we hold that the
trial court did not err, we need not address whether the evidence is legally
sufficient after eliminating the evidence of appellant=s identification
at the show-up.  We overrule appellant=s second point of
error and affirm the trial court=s ruling.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed December 22, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  A jury found
appellant guilty and sentenced him to fifty years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice.





[2]  The sequence
of events regarding Perkola=s identification of the camera is somewhat
unclear.  At trial, Sanderson testified
that he showed Perkola the camera but did not tell her that he had found it in
appellant=s pocket. 
However, testimony at the suppression hearing indicates that Sanderson told
Perkola that he had recovered the camera from appellant either before or after
she realized that hers was missing.  The
record clearly reflects that Sanderson showed Perkola the camera and that she
identified it as hers before she identified appellant in the car.





[3]  The record
reflects that Perkola suffered from macular degeneration.  Perkola testified that this condition mainly
affected her ability to read and that she could see things clearly up-close.





[4]  A show-up is a
pre-trial identification procedure in which a suspect is confronted with a
witness to or the victim of a crime. 
Unlike a lineup, a show-up is a one-on-one confrontation.  Black=s Law Dictionary 645 (Second Pocket ed. 2001).





[5]  Although defense counsel=s cross-examination of Sanderson at
the suppression hearing revealed that Sanderson recovered a camera, not a
weapon, from appellant, counsel made no reference to the search as being overly
broad.  At the suppression hearing,
counsel argued only that appellant=s encounter with Sanderson was an arrest that lacked
probable cause and asked the court to Agrant the defense motion to suppress any evidence obtained
as a result of this illegal detention and arrest, seizure and arrest of Mr.
Johnson.@ 
At the beginning of trial, defense counsel objected to Athe procedure that was discussed in
an earlier proceeding@ and later asserted that Athe same objections I=ve lodged previously will remain.@





[6]  Although the
record is somewhat inconsistent, it is clear that no more than thirty minutes
elapsed  between the time officers
arrived on the scene and the time Sanderson returned to Perkola=s house with appellant.