Affirmed; Majority and Concurring Opinions of August 8, 2006, Withdrawn,
and Substitute Majority and Concurring Opinions filed February 15, 2007








Affirmed; Majority and Concurring Opinions of August 8, 2006,
Withdrawn, and Substitute Majority and Concurring Opinions filed February 15,
2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00842-CR

____________

 

MIKE SEYMOUR MOUNT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law Number Eleven

Harris County, Texas

Trial Court Cause No. 1291992

 



 

S U B S T I T U T E   M A J O R I T Y  O P I N I O N

We withdraw our opinion of August 8, 2006, and we issue
this opinion in its place. 

I.  Factual and Procedural
Background








On Saint Patrick=s Day 2005,
Houston Police Officer Kenneth Dagnault received a police dispatch regarding a
possible vehicle theft near 5177 Richmond, involving a white Cadillac pickup
truck.  A few minutes later, Officer Dagnault saw what he described as Aa tan or goldish
colored or silver, light colored Cadillac pickup truck@ being driven
about a half of a block from that location.  He followed the vehicle and
initiated a Afelony stop.@  The driver of
the Cadillac truck, later identified as appellant, pulled the vehicle into a
parking lot and stopped.  Officer Dagnault, with back-up officers, approached
the vehicle with guns drawn.  The officers accompanying Officer Dagnault opened
the doors of the vehicle and asked that appellant and his companion exit the
vehicle.  Both men were patted down for weapons, while Officer Dagnault checked
appellant=s driver=s license and the
registration of the vehicle.   Further investigation revealed that the vehicle
was registered to appellant=s wife and, in fact, was not stolen.  However,
during this investigation, Officer Dagnault detected a strong odor of alcohol
on appellant and noticed that appellant=s eyes were red,
glassy, and bloodshot.  Thus, although the investigation eliminated appellant
as a suspect in the unauthorized use of the motor vehicle he was driving, as a
result of the stop, appellant fell under suspicion for driving while
intoxicated (ADWI@). 

Officer Dagnault called a DWI unit to come to the scene and
test appellant for alcohol intoxication.  Officer Stacy Pierce, assigned to the
DWI task force, arrived shortly thereafter and attempted to conduct several
field sobriety tests, most of which appellant refused to perform.  Appellant
also refused to consent to a breath test for alcohol and refused to sign a
written acknowledgment that he had received his DWI warnings.  Appellant
admitted that he had consumed approximately two beers.  Officer Pierce concluded
that appellant had lost the normal use of mental and physical faculties and
placed appellant under arrest.

Appellant was charged by information with a misdemeanor DWI
offense.  At trial, the jury found appellant guilty and assessed punishment at
three days= confinement in the Harris County Jail and a $400
fine. 

II. Issues Presented 

Appellant asserts the following issues on appeal: 

(1)B(2)         The trial court abused its discretion in
denying appellant=s (1) request to strike venire
member number three, for cause and (2) request for a hearing to further examine
this venire member=s ability to be fair and impartial.









(3)B(4)         The trial court abused its discretion in
denying appellant=s motion to suppress the fruits of
an allegedly unlawful arrest and detention in which he allegedly was seized and
searched without a warrant or probable cause. 

 

III. Analysis 

A.      Did the trial court abuse
its discretion in denying appellant=s request to strike venire member number three for
cause?

 

In two issues, appellant challenges the trial court=s denial of his
(1) request to strike venire member number three, Charlotte Ann Denton, for
cause and (2) request for a hearing to further examine Denton=s ability to be
fair and impartial.  During voir dire, Denton explained that she was a death
claims analyst.  When asked whether her line of work would affect her ability
to be fair, the following exchange occurred:

Defense Counsel:           Does it involve DWI accidents?

Venireperson No. 3:       I=m a death claims analyst.  I pay
death claims.

Defense Counsel:                    DWI=s?

Venireperson No. 3:       Well, if someone dies, yes, I
would.

Defense Counsel:                    Would that
experience affect your ability in this case toC

Venireperson No. 3:       Probably not as long as there
wasn=t a child involved. Because I have
two children, I tend toC

Defense Counsel:           AProbably not@ does not work. I=ve got to have a definitive. I
always tell people to err on the side of caution. If you are not sure, I always
tell them to err on the side of caution. So we=ll call you up individually. 

 

Later, when the parties
were making their peremptory strikes, appellant=s counsel objected as follows: 

 








Defense Counsel:                    Judge, I=m going to ask that No. 3 be
challenged for cause. She was the one who itCI asked her about her job and she does death claims and she
said it would probably affect her. I told her that we would bring her up only
because of the time element involved.

The Court:                     That=s denied. 

Defense Counsel:           Can I bring her up,
Judge?

The Court:                    That=s denied.

 

. . .

 

Defense Counsel:                    Just for
clarification on the record, my understanding when we started, you were going
to allow us to bring them up if we had any questions of them. So that=s why I leftCI just wanted to be clear on it, I
was running out of time and I told her to think about it and we would bring her
up, we would have to answer yes or no.  I told her Aprobably@ wouldn=t be sufficient and I was going to
move on it.

The Court:                     What I said was if you think it is
going to screw up the whole panel, then you can bring them. Also, the question
she was toying with was the death of a child. We don=t have that. 

Defense Counsel:                     She doesn=t know that.

The Court:                     Okay. 








Defense Counsel:                    Judge, for the
record, I=m going to request an extra
peremptory challenge, I=m having to use one of my
peremptory challenges on No. 3, juror No. 3, Charlotte Denton. And, by doing
so, I=m having to take another juror that
I would use a strike on. At this time I=m requesting a challenge and once I submit my strikes and
the State submits their strikes, then I would identify the juror that I=m having to take, Your Honor, that
I don=t have a strike to use on. 

The Court:                     All right, sir. That will be
denied. 

Defense Counsel:                    Judge, I usedCI would use the strike that I=m using on Ms. Denton, No. 3, I
would use that strikeCor, if the Court granted me an
extra strike, I would use it on No. 20, Your Honor.  He noted to be victim of a
DWI.

The Court:                     All right, sir. 

Defense Counsel:                    Therefore I wouldn=t want him as a juror in this case.


The Court:                     All right.[1]

We cannot conclude, as appellant suggests, that the answers
Denton gave demonstrate that she would be unfair or biased in this case. 
Denton never said she could not be fair to appellant; she merely indicated that
her judgment might be impacted in a DWI accident case involving a child.  This
case, however, does not involve a DWI accident or injury or death to any
person.

Bias is an inclination toward one side of an issue rather
than to the other.  See Hyundai Motor Co. v. Vasquez, 189 S.W.3d 743,
750B51 (Tex. 2006). 
Disqualification of a venire member extends to bias or prejudice against the
subject matter of the suit as well as against the litigants.  Id.  To
disqualify a potential juror for bias as a matter of law, the record must show
conclusively that the potential juror=s state of mind
led to the natural inference that she would not act with impartiality.  Id.  A
venire member=s indication that she cannot be fair and impartial,
because her feelings are so strong in favor of a party that she will base her
verdict on those feelings and not on the evidence, supports a successful
challenge for cause.  Id.








If a prospective juror=s bias or
prejudice for or against a party in a lawsuit is established as a matter of
law, the trial court must disqualify that person from service.  Tex. Gov=t Code Ann. ' 62.105(4) (Vernon
Supp. 2005); Malone v. Foster, 977 S.W.2d 562, 564 (Tex. 1998).  If bias
or prejudice is not established as a matter of law, whether the potential juror
is sufficiently biased or prejudiced to merit disqualification is a factual
determination the trial court must make using its discretion.  Malone, 977
S.W.2d at 564.  We do not reverse on appeal in the absence of an abuse of
discretion.  See Cortez ex rel. Estate of Puentes v. HCCI‑San Antonio,
Inc., 159 S.W.3d 87, 95 (Tex.  2005).  Deference to the trial court is
especially critical when an appellate court is reviewing a record that
demonstrates uncertainty in a venire member=s responses. 
Because the trial court is in the best position to evaluate the prospective
juror=s sincerity and
ability to be fair and impartial, the appellate court gives great deference to
the trial court.  Goode v. Shoukfeh, 943 S.W.2d 441, 453 (Tex. 1997).   








The record does not conclusively show that Denton=s feelings were so
strong in favor of a party that she would base her verdict on those feelings
and not on the evidence.  Although Denton stated that she dealt with death
claims (that sometimes resulted from DWI accidents), she affirmatively stated
that it probably would not affect her unless there was a child involved. 
Moreover, the trial court was in a better position to evaluate Denton=s voir dire
responses than this court, and the trial court specifically stated, in regard
to Denton, that Athe question she was toying with was the
death of a child.  We don=t have that.@   The trial court
was keenly aware of Denton=s answers and concluded that she could be
impartial in this case. We find no abuse of discretion.  See Hafi v. Baker, 164
S.W.3d 383, 385 (Tex.  2005) (concluding that a juror who worked as defense
attorney in medical malpractice actions was not biased as a matter of law in
medical malpractice action although he suggested that, because of his career as
a defense attorney, he could relate to the defendants= perspective); Cortez,
159 S.W.3d at 93 (holding that disqualification of venire member for cause was
not required, though during voir dire venire member said that, as an insurance
adjuster, he had a better understanding of defendant nursing home owner=s side of the
case); Kiefer v. Continental Airlines, Inc., 10 S.W.3d 34, 39 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied) (holding that potential juror who stated she would
give benefit of doubt to airline was not biased as matter of law). 
Accordingly, we overrule appellant=s first issue.








Turning to appellant=s second contention,
that the trial court erred in failing to grant his request to further examine
Denton regarding her alleged bias, we again consider whether the trial court
abused its discretion in making this ruling.[2] 
See Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)
(concluding that the standard by which to review restrictions on voir dire
questioning is an abuse of discretion).  A defendant enjoys the right to question a panel of potential
jurors freely, but the trial court=s discretion extends to imposing
reasonable restrictions on the amount of time allotted for such
questioning.  Boyd v. State, 811 S.W.2d 105, 115 (Tex. Crim. App.
1991).  Although Denton was employed as a death claims analyst and her job
occasionally included handling death claims resulting from DWI accidents, when
asked if her line of work would affect her judgment, she replied, AProbably not, as
long as there was not a child involved.@[3]  Appellant
requested that Denton be brought up to the bench for further examination.  The
trial court denied this request but explained its ruling, noting that appellant=s case did not
involve the death of a child.  If the prospective juror states her position
clearly, and without reservation, the trial court does not err in refusing to
permit further questioning.  See White v. State, 629 S.W.2d 701, 706
(Tex. Crim. App. 1981).  The trial court did not abuse its discretion in
denying appellant=s request for further examination of
Denton=s alleged bias.  See
Phillips v. State, 701 S.W.2d 875, 889 (Tex. Crim. App. 1985) (concluding
that when prospective juror clearly stated that she would hold the State to a
higher burden of proof beyond all doubt, the trial court did not err in
allowing further questioning), overruled on other grounds by Hernandez v.
State, 757 S.W.2d 744, 752 (Tex. Crim. App. 1988); see also Abron
v. State, 523 S.W.2d 405, 408 (Tex. Crim. App. 1975) (concluding that trial
court can set reasonable time limits and restrict repetitious or vexatious
questions, restrict questions asked in improper form, restrict questions
directed at personal habits of jurors); Ford v. State, 14 S.W.3d 382,
390 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (stating that A[a] trial judge
may limit a defendant=s voir dire under specific circumstances;
that is, where a question commits a venire member to a specific set of facts[,]
. . . where the venire member has already stated his position clearly and
unequivocally, and where the questions are not in proper form@ (emphasis
added)).  We overrule appellant=s second issue. 

B.      Did the trial court abuse
its discretion in denying appellant=s motion to suppress? 

In issues three and four, appellant contends the trial
court erred in denying his motion to suppress. Specifically, in issue three, he
alleges that the trial court should have suppressed evidence of the DWI offense
because the initial detention was unlawful.  In issue four, he contends the
motion to suppress should have been granted because the initial detention was
actually an illegal arrest, and, for this reason, the trial court erred in
denying his motion. 

We review the trial court=s ruling on a
motion to suppress under an abuse‑of‑discretion standard.  Long
v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991).  If supported by the
record, a trial court=s ruling on a motion to suppress will not
be overturned.  Brooks v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  At a suppression hearing, the trial court is the sole
finder of fact and is free to believe or disbelieve any or all of the evidence
presented.  Id.  We give almost total deference to the trial court=s determination of
historical facts that depend on credibility and demeanor, but review de novo
the trial court=s application of the law to the facts if
resolution of those ultimate questions does not turn on the evaluation of
credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).

1.       Investigative
detention or arrest? 

Interactions between police and civilians are divided into
three categories: (1) encounters, (2) investigative detentions, and (3)
arrests.  See State v. Larue, 28 S.W.3d 549, 553 n. 8 (Tex. Crim. App. 
2000).   AA person is arrested when he has been actually placed
under restraint or taken into custody by an officer or person executing a
warrant of arrest, or by an officer or person arresting without a warrant.@   Tex. Code Crim. Proc. Ann. art. 15.22
(Vernon 2005).  However, this Arestraint of liberty@ standard is not
adequate when distinguishing between an arrest and a detention because it is a
characteristic common to both.  Dang v. State, 99 S.W.3d 172, 180 (Tex.
App.CHouston [14th
Dist.] 2003), rev=d on other
grounds, 154 S.W.3d 616 (Tex. Crim. App. 2005); Green v. State, No.
14-03-00213-CR, 2004 WL 1381021, at *4 (Tex. App.CHouston [14th
Dist.] Jun. 22, 2004, pet. ref=d) (not designated for publication).
Whether a person is under arrest or subject to a temporary investigative
detention is a matter of degree and depends upon the length of the detention,
the amount of force employed, and whether the officer actually conducts an
investigation. See Woods v. State, 970 S.W.2d 770, 775 (Tex. App.CAustin 1998, pet.
ref=d). Likewise,
whether a detention is an actual arrest or an investigative detention depends
on the reasonableness of the intrusion under all of the facts.  See Rhodes
v. State, 945 S.W.2d 115, 118 (Tex. Crim. App.  1997). 








Appellant contends that actions the officer took at the
time he was stopped transformed the traffic stop into an unlawful arrest. 
During an investigative detention, an officer may employ the force reasonably
necessary to effect the goal of the detention: investigation, maintenance of
the status quo, or officer safety.  Id. at 117.  However, if the force
utilized exceeds that reasonably necessary to effect the goal of the stop, this
force may transform an investigative detention into a full-blown arrest.  See
State v. Moore, 25 S.W.3d 383, 385B86 (Tex. App.CAustin 2000, no
pet.).  Reasonableness must be judged from the perspective of a reasonable
officer at the scene, rather than with the advantage of hindsight. Rhodes, 945
S.W. 2d at 118.   Allowances must be made for the fact that officers must often
make quick decisions under tense, uncertain, and rapidly changing
circumstances. Id.  Additional factors to consider in determining the
reasonableness of the detention include the nature of the crime under
investigation, the degree of suspicion, the location of the stop, the time of
day, and the reaction of the suspect.  Moore, 25 S.W.3d at 386.   The
officer=s opinion, while
not determinative, is another factor to be considered.  Amores v. State, 816
S.W.2d 407, 413 (Tex. Crim. App. 1991).  Also very important is whether the
officers actually conducted an investigation after seizing the suspect.   Moore,
25 S.W.3d at 386. 








At the suppression hearing, Officer Dagnault testified
that, around midnight on Saint Patrick=s Day 2005, he
received a call from dispatch about a possible auto theft in progress around
the 5100 block of Richmond, involving a white Cadillac pickup truck driven by
an unknown male.  At the time he received the call, Officer Dagnault was
located north of Richmond on Sage, about three-quarters to a mile away from the
location at which the possible auto theft was in progress.  Approximately two
minutes later, Officer Dagnault arrived near the suspect area and observed a Atan or goldish
colored or silver, light colored Cadillac pickup truck.@  Officer Dagnault
advised dispatch that he had located the Cadillac pickup truck and was waiting
for back-up before he initiated a felony traffic stop.  Officer Dagnault
further testified that he waited for another unit because of the safety
concerns involved with a stolen vehicle.  Officer Dagnault testified that, in
conducting a felony stop of a suspected stolen vehicle, the procedure is to approach
the vehicle as if a highly dangerous person is behind the wheel.  Officer
Dagnault and two other officers approached appellant=s vehicle with
guns drawn and gave appellant and his passenger oral commands to put their
hands out the windows to ensure there were no unseen persons in the vehicle. 
The officers then opened the doors to the vehicle, escorted appellant and his
passenger out, and told them to place their hands on the vehicle while the
officers conducted a pat-down. Officer Dagnault testified that during a felony
stop, he typically puts his weapon away as soon as he feels Asafe,@  meaning that the
situation is in his control.  Officer Dagnault testified that, during this
particular stop, the guns were put away after a minute or less, as soon as
appellant=s hands were on the car.

At this time, Officer Dagnault and the officers conducted a
thorough investigation,  including checking the vehicle=s registration.  
At the hearing, Officer Dagnault described this investigation: 

Q:      [The State]:  And what
happened after they got out of the car?

A:      [Dagnault]:   We go through,
we actually, you know, pat them down, make sure there=s no weapons or anything like that.
Get their Ids, run the registration, verifyCbasically just investigate the scene, find out what=s going on, who is what, you know,
make sure if it is a stolen vehicle, of course, registration may not match or
it won=t match. The ignition may be popped
or something like that.

Q:      [The State]:  And what
investigation did you do in this case?

A:      [Dagnault]:   At that point
in time we pulled them out of the vehicle. We pat them down, pull their wallet
out, took his ID, one officer stands there and watches, the other checks the ID
to the registration. I believe it was registered to his wife. It wasn=t him.  Actually, it was registered
to a business and under his wife.

Q:      [The State]:  And at that
point, when you find out that the car is registered to Defendant=s wife, what do you do?

A:      [Dagnault]:   Well, it
depends. In the current situation, we got them out the vehicle, we detected a
strong odor of alcoholic beverage and had very glassy eyes, red eyes. So the
investigation kind ofConce we verified the vehicle was
theirs, wasn=t stolen, the investigation went
into a different direction. 

Officer Dagnault testified that upon detection of the
alcohol on appellant, he advised appellant that he was going to investigate him
for driving while intoxicated.  The officers waited for the DWI task officer to
arrive.  Appellant was never placed in handcuffs or put in the back of the patrol
car.








Appellant, testifying at the suppression hearing, stated
that the officers blocked his vehicle and asked him to throw his keys out the
car window and exit the vehicle.  Appellant testified that the officers forced
him at gunpoint to place his hands on his vehicle while they searched him for
weapons.  Appellant stated that he did not believe he was free to go, and he
thought that he was being placed under arrest at this time.  Appellant points
to these facts in arguing that the traffic stop was an illegal arrest.  In
support of this argument, he relies on two cases, Amores, 816 S.W.2d at
407, and Colston v. State, 511 S.W.2d 10 (Tex. Crim. App. 1974).  These
cases are factually distinguishable. 

In Amores, a police officer responded to a Aburglary in
progress@ call from an
apartment complex indicating a black male was loading a box into a car.  Amores,
816 S.W.2d at 410.   The officer arrived at the scene within one minute of
the call and observed Amores, a black male, sitting in a parked car.  Id. 
As the officer entered the apartment-complex parking lot, Amores began to drive
away.  Id.  The officer blocked Amores=s vehicle with his
police car, drew his gun and pointed it at Amores, ordered Amores out of his
vehicle and made him lay on the ground with his hands behind his back, and told
Amores that he would shoot him if he did not follow directions.  Id. at
411B12.   The Court of
Criminal Appeals held that A[t]hese facts are sufficient to
demonstrate that appellant had been restricted or restrained in his liberty to
such a degree as to constitute an arrest.@  Id. at
412.  The court noted that although the detaining officer characterized Amores=s stop as an
investigative detention, he did not conduct any investigation.  Id. 
Appellant argues that under Amores, by the time the officers observed
the strong odor of alcohol on his breath and his glassy, red eyes, he already
was restrained in his liberty to the extent that he was arrested.  Thus,
appellant argues, he was illegally arrested without probable cause and the
evidence of his intoxication (testimony of the officers) should have been
excluded as Afruit of the poisonous tree.@








Appellant=s reliance on Amores is misplaced. 
Unlike the situation in Amores, in this case there is testimony from the
officer that supports the only reason that the guns were drawnCfor safety
concerns involved in felony stops of possible stolen vehicles.  See Gunnell
v. State, No. 14-04-00214-CR, 2005 WL 481355, at *6B7 (Tex. App.CHouston [14th
Dist.] Mar. 1, 2005, pet. dism=d) (distinguishing Amores,
concluding that unlike Amores, the use of force with guns was reasonable
in light of present safety concerns) (not designated for publication);  Morris
v. State, 50 S.W.3d 89, 97B99 (Tex. App.CFort Worth 2001,
no pet.) (distinguishing Amores and concluding that handcuffing the
suspect was not an arrest based on the safety concerns of the officers). 
Moreover, unlike the situation in Amores, where no investigation was
undertaken, the officers in this case conducted a thorough investigation upon
detaining appellant.  See Gunnel, 2005 WL 481355, at *7.  

Appellant=s reliance on Colston v. State, 511
S.W.2d at 12, is likewise misplaced for this reason.  In Colston, although
the Court of Criminal Appeals found that appellant was under arrest when he was
told at gunpoint to place his hands on his vehicle, there was no evidence that
the officers conducted an investigation.  Id.  

In
addition, both Amores and Colston preceded the Court of Criminal
Appeals=s opinion in Rhodes, a case in
which our high court rejected a Abright-line@ test that mere handcuffing is always
the equivalent of an arrest.  See Rhodes, 945 S.W.2d at 118.  The Rhodes
court noted that Acommon sense and ordinary human
intelligence must govern over rigid criteria@ in evaluating the
reasonableness of an investigative detention, explaining: 

Reasonableness must be judged from
the perspective of a reasonable officer at the scene, rather than with the
advantage of hindsight.  Furthermore, allowances must be made for the fact that
officers must often make quick decisions under tense, uncertain and rapidly
changing circumstances.

Id.  The Rhodes
court indicated that, during an investigatory detention, (1) officers may use
such force as is reasonably necessary to protect the officers; (2) boxing in a
suspect=s car and drawing
weapons does not automatically convert a detention into an arrest; and (3) in
the interest of officer safety, it may be reasonable to surround a suspect=s car and approach
with drawn weapons during an investigatory detention.  Id. at 117.








The trial court did not abuse its discretion in impliedly
determining that, under the circumstances reflected by this record, the traffic
stop amounted only to a temporary investigative detention.  See Rhodes, 945
S.W.2d at 117B18 (holding that  removing suspect from car,
handcuffing him, and walking him back to the patrol car was reasonable to
protect officer safety and did not constitute an arrest, based in part on
officer=s testimony regarding
safety);  Spight v. State, 76 S.W.3d 761, 769B70 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (concluding that because the officer felt a heightened
concern for his personal safety, handcuffing the defendant did not amount to
arrest and was reasonable as a temporary investigative detention); Nargi v.
State, 895 S.W.2d 820, 822 (Tex. App.CHouston [14th
Dist.] 1995) (holding that ordering a suspect to the ground does not
necessarily convert an investigatory intention into an arrest), pet. dism=d, improvidently
granted, 922 S.W.2d 180 (Tex. Crim. App. 1996); Green, 2004 WL 1381021,
at *4B5 (concluding that
appellant was not under an arrest when the officer blocked his vehicle and
approached appellant with his service revolver drawn).

2.       Was
appellant=s investigative detention valid? 

Appellant also contends that there was no reasonable
suspicion to make the initial stop of his vehicle.  Therefore, we address
whether Officer Dagnault, at the very least, had reasonable suspicion to stop
appellant=s vehicle.  Reasonable suspicion exists if the officer
has specific, articulable facts that, when combined with rational inferences
from those facts, would lead him to reasonably conclude that a particular
person actually is, has been, or soon will be engaged in criminal activity.  Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  This is an objective
standard which requires the court to disregard any subjective intent of the
officer making the stop and look solely to whether an objective basis for the
stop exists.  Id.  A reasonable‑suspicion determination is made by
considering the totality of the circumstances.  Id. at 492B93.








An investigatory detention or an arrest is not invalid
merely because an officer relies upon reasonably trustworthy information that
later proves to be erroneous.  Dancy v. State, 728 S.W.2d 772, 783 (Tex.
Crim. App. 1987); Brown v. State, 986 S.W.2d 50, 51 (Tex. App.CDallas 1999, no
pet.) (concluding that although there was no evidence that the vehicle was
actually stolen, the officers had probable cause for the warrantless arrest
based on the stolen vehicle information on the Ahot sheet,@ thus the
contraband found as a result was admissible); Kelly v. State, 721 S.W.2d
586, 587B88 (Tex. App.CHouston [1st
Dist.] 1986, no writ) (finding that stop of defendant because officer believed
the vehicle was stolen provided the officer with reasonable suspicion to detain
defendant regardless of whether the information was shown to be inaccurate or
false).  

When there has been some cooperation among police officers,
the cumulative information known to the cooperating officers at the time of the
stop is to be considered in determining whether reasonable suspicion exists.  Hoag
v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  Moreover, the
determination of reasonable suspicion is not limited to the facts solely within
the detaining officer=s knowledge.  See State v. Jennings,
958 S.W.2d 930, 933 (Tex. App.CAmarillo 1997, no pet.).  Reasonable
suspicion can be based on information relayed to one officer by other officers
and the sum of the information known to those officers cooperating with him.  See
Fearance v. State, 771 S.W.2d 486, 509 (Tex. Crim. App. 1988). 








Officer Dagnault had a reasonable suspicion to detain
appellant based upon the circumstances and his knowledge and experience as a
police officer.  He stopped appellant in the vicinity of a reported possible
vehicle theft.  Although Officer Dagnault was not sure of the color of the
vehicle, he testified that appellant was driving some kind of light-colored
Cadillac pickup truck. Officer Dagnault had information that a white Cadillac
pickup truck possibly had been stolen in the area.  Officer Dagnault, after
receiving the report over his radio, was justified in searching for and
stopping a vehicle that was similar to the vehicle described by the caller.  See
Mann v. State, 525 S.W.2d 174, 176 (Tex. Crim. App. 1975) (concluding that
officers, upon receiving the anonymous call, were justified in initiating an
investigation by proceeding to hunt for a car and occupants fitting the
description given over the phone); Mabry v. State, 492 S.W.2d 951, 953
(Tex. Crim. App. 1973) (concluding that  police had probable cause to stop
and arrest a suspect matching a broadcast about two black suspects in a green
1965 Chevrolet with Florida plates); Vannatta v. State, 773 S.W.2d 771,
773 (Tex. App.CCorpus Christi 1989, pet. ref=d) (concluding
that an officer who received a radio dispatch about an unnamed person driving a
blue and silver Bronco displaying the license plate ZY709 had reasonable suspicion
to stop defendant, who was driving a silver and blue Chevy Silverdo pickup). 
The trial court did not abuse its discretion by impliedly determining that the
circumstances, taken together, gave Officer Dagnault reasonable suspicion to
stop appellant=s vehicle and conduct an investigative detention.[4] 









Appellant
relies on Faulk v. State, 574 S.W.2d 764 (Tex. Crim. App. 1979) and McMillan
v. State, 609 S.W.2d 784 (Tex. Crim. App. 1981), to support his position
that the officers did not have probable cause or reasonable suspicion to stop
and detain him. Citing Faulk, appellant argues the initial detention is
invalid because the dispatch was in regard to a possible auto theft.  In
Faulk, a young, black male wearing a multicolored shirt committed an
armed robbery and then fled the scene on foot.  574 S.W.2d at 765. The Court of
Criminal Appeals found that a police officer who stopped the defendant=s car shortly after the armed robbery
and removed him from the car at gunpoint, did not have reasonable suspicion or
probable cause to stop the defendant on the basis of a description of the
robber as a young, black male and furtive gestures made by the defendant as he
was followed by the officer. Id. at 766.  Thus, the court determined
that the only fact connecting the suspect to the robbery was that he was a
young, black male.  Id.

Appellant=s reliance on Faulk is
misplaced. First, Faulk has been seriously undermined, if not expressly
overruled, by the Court of Criminal Appeals=s decision in Woods v. State,
in which our high court abandoned the Aas consistent with innocent activity
as with criminal activity@ approach to analyzing reasonable suspicion.  See Woods,
956 S.W.2d at 38. Second, appellant=s analysis of the
reasonable-suspicion issue fails to take into account all of the facts known to
Officer Dagnault and the brief time interval between the dispatch and the
stop.  Therefore, he does not consider the totality of the circumstances.  At
the time of the stop, Officer Dagnault knew that an auto theft was possibly in
progress involving a white Cadillac pickup truck near the 5100 block of
Richmond. Within minutes, Officer Dagnault saw a vehicle similar to that
description near the location identified in the dispatch.  Under the totality
of the circumstances, the trial court did not abuse its discretion in
determining that Officer Dagnault had reasonable suspicion to momentarily
detain appellant and ask for his identification. See White v. State, 695
S.W.2d 799, 801 (Tex. App.BAmarillo 1985, no pet.) (concluding that reasonable suspicion
existed where three black males had committed robbery ten to fifteen minutes
earlier and in close proximity to where officers saw two black males jogging
down middle of road in early morning hours and began to run when they saw
officers); see also Gaines v. State, 888 S.W.2d 504, 509 (Tex. App.BEl Paso 1994, no pet.)  (finding
reasonable suspicion existed where officer saw two black males in a yellow
Honda Civic on a certain road after receiving a radio broadcast that two black
males had committed a burglary only minutes before, and had fled in a late
model yellow Honda Civic and were last seen traveling south on the same road). 








In McMillan,
the Court of Criminal Appeals found that the initial stop of the defendant=s vehicle was not justified.  609
S.W.2d at 786.  In that case, the officer who initiated the stop testified that
he Areally had no idea if [McMillan=s] vehicle was the same vehicle they
had been chasing earlier that evening.@  Id.  The officer testified
that he Athought@ that it was the same vehicle.  Id. 
In McMillan, the officer that made the stop did not have more than a
Ahunch@ or Asuspicion.@ Id.  The facts before us
demonstrate that Officer Dagnault had more than a hunch when he stopped
appellant=s Cadillac pickup truck.  

Therefore, we conclude that Officer Dagnault had reasonable
suspicion to stop appellant=s vehicle to investigate whether it was
stolen.  Pursuant to this investigative detention, Officer Dagnault was
entitled to question appellant regarding his identity and vehicle
registration.  See Hoag, 728 S.W.2d at 380 (observing that an officer
may briefly stop a suspicious individual in order to determine his identity or
maintain the status quo while obtaining more information).  In addition,
because a valid investigatory stop had been made, the officer was justified in
conducting a limited search of the person of the suspect, such as a frisk or
pat down, for the protection of the officer while he conducted the
investigation.  See Wood v. State, 515 S.W.2d 300, 306 (Tex. Crim. App.
1974).  During this
brief and minimally intrusive detention, additional facts developed to support
a continued detention of appellant.  Although further investigation revealed that
the vehicle appellant was driving was registered to appellant=s  wife, in the
interim Officer Dagnault reasonably began to suspect that appellant had been
driving while intoxicated.  Thus, even though appellant was not arrested for
unauthorized use of a vehicle, the investigation refocused on whether appellant
had violated another law.  Officer Pierce of the DWI task force concluded that
appellant had been driving while under the influence of alcohol, which led to appellant=s arrest.  We
overrule appellant=s third and fourth issues.

                                                 IV. Conclusion  








The trial court did not abuse its
discretion in impliedly finding that (1) Officer Dagnault had reasonable
suspicion to stop appellant=s vehicle, (2) the investigative detention
did not rise to the level of an arrest, and (3) during this valid detention,
the officers acquired probable cause to arrest appellant after they detected a
strong odor of alcohol on appellant=s breath and
noticed that appellant=s eyes were red, glassy, and bloodshot. 
Therefore, we conclude that the trial court did not abuse its discretion in
denying appellant=s motion to suppress.  

The trial court=s judgment is affirmed.

 

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

 

 

Majority and Concurring Opinions of August 8, 2006,
Withdrawn, and Substitute Majority and Concurring Opinions filed February 15,
2007.

 

Panel consists of Justices Anderson, Edelman, and Frost
(Edelman, J., concurring).

 

Publish C Tex. R. App. P. 47.2(b).

 

 

 









[1]  We note that after this exchange, the clerk of the
court called the venire members, including venire member No. 20, John Bynum, to
be seated. 





[2]  Appellant has not provided this court with any
authority in support of his position that he was entitled to a hearing to
further question Denton.





[3]  Emphasis added.





[4]  Compare Delk v. State, 855 S.W.2d 700, 704-05
(Tex. Crim. App. 1993) (concluding that fact that car parked outside building
was listed on police computer as stolen provided police officers with
reasonable suspicion of criminal activity sufficient to permit their
investigatory stop of ordering residents from the building to answer
questions); Colston, 511 S.W.2d at 12 (concluding that defendant was
under arrest but that officers had the right to act upon the basis of the
teletype dispatch and were entitled to assume that the officer requesting the
arrest had sufficient probable cause to justify the arrest); Louis v. State,
825 S.W.2d 752, 754B55 (Tex. App.CHouston
[14th Dist.] 1992, no pet.) (concluding that evidence supported trial court=s finding that police officer=s initial stop of a light tan Cadillac was legal when
it was the only car on the street where a robbery had occurred and it was
reported that the robbery suspects were driving a white Oldsmobile); and
Clifton v. State, 755 S.W.2d 556, 558 (Tex. App.CFort Worth 1988, no writ) (stating that police officer
had probable cause to stop and arrest defendant based on information by police
dispatcher that vehicle believed to be stolen might be found at specific
address from which police officer had observed defendant driving away); with
Young v. State, 133 S.W.3d 839, 842 (Tex. App.CEl Paso 2004, no pet.) (concluding that State failed
to prove officers had requisite reasonable suspicion to stop defendant=s car when officer did not testify that he suspected
defendant had committed an offense, or otherwise establish why  officers
singled-out particular residence or area of surveillance, description of the
car officers were asked to stop, or what the occupants of the car were
suspected of doing).